**Ivette SANTIAGO–NEGRON, et al.,
Plaintiffs, Appellees,**

v.

**Modesto CASTRO–DAVILA, etc., et al.,
Defendants, Appellants.**

No. 87–1869.

United States Court of Appeals,
First Circuit.

Heard June 7, 1988.

Decided Jan. 11, 1989.

Rehearing and Rehearing En Banc Denied
Feb. 3, 1989.

Reina Colon De Rodriguez, Asst. Sol. Gen., Dept. of Justice, with whom Rafael Ortiz Carrion, Sol. Gen., and Norma Cotti Cruz, Deputy Sol. Gen., were on brief, for defendants, appellants.

Miguel Pagan, San Juan, P.R., with whom Eliezer Aldarondo Ortiz, Hato Rey, P.R., was on brief, for plaintiffs, appellees.

Before BOWNES, TORRUELLA and SELYA, Circuit Judges.

BOWNES, Circuit Judge.

The lawsuit giving rise to this appeal was an aftermath of the November 1984 elections in Puerto Rico. Prior to that election, the Mayor of the Municipality of Las Piedras and the majority of its Municipal Assembly were members of the New Progressive Party (NPP). As a result of the election, political control of Las Piedras shifted to the Popular Democratic Party (PDP); the newly-elected Mayor and a majority of the Municipal Assembly belonged to the PDP. Animated by the venerable political and military maxim that "to the victor belongs the spoils," the new Mayor and his administration proceeded to replace Municipal employees belonging to the NPP with those whose allegiance was to the PDP. This was considered by the adversely affected employees to be counter to the teachings of *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980),

and *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Hence a 42 U.S.C. § 1983 civil rights action was brought against the Mayor of Las Piedras, its Personnel Officer, and the Director of Public Works, the President of the Municipal Assembly, the Municipality itself, and the Commonwealth of Puerto Rico. All of the city officials were sued individually [1] and in their official capacity. The complaint alleged that the defendants violated the plaintiffs' constitutional rights to due process and freedom of speech either by firing them or by transferring, demoting, and discriminating against them because of their political affiliation.

When the trial started, there were seven plaintiffs: [2] Rogue Castro Hernandez; Miguel Collazo Gonzalez; Hector R. Rodriguez Estrella; Roberto Figueroa del Valle; Pablo Cruz Soto; Ivette Santiago Negron; and Wanda I. Rosa Flores. The defendants at trial were: Mayor Modesto Castro Davila; Personnel Officer Judith Velazquez Delgado; Director of Public Works Bernaldo de Jesus Diaz; and the Municipality.[3]

After a jury trial, all the defendants, except the Municipality [4] were found liable to some or all of the plaintiffs; compensatory damages were assessed against the defendants separately on each claim and three of the plaintiffs were awarded punitive damages.[5] The district court incorporated into the judgment a reinstatement and back pay order for each plaintiff. The three individual defendants have appealed. They raise five issues: the jury instructions; the district court's back pay and reinstatement orders; the court's handling of inconsistent answers to special jury questions; the finding of liability and award of damages in favor of Wanda I. Rosa Flores; and the jury award of punitive damages.

Before we start our consideration of the issues appealed, it must be noted that appellants have not appealed the jury findings that the plaintiffs were fired or demoted and discriminated against solely because of their political affiliation.

## I. THE JURY INSTRUCTIONS

■ Appellants' claim of error in the jury instructions has two bases. First, that the instruction did not completely follow the test established in *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 286–87, 97 S.Ct. 568, 575–76, 50 L.Ed.2d 471 (1976). Second, that the *Mt. Healthy* instruction, in order to be properly applied, should have included specific instructions on the "nullity" of appointments made contrary to the personnel laws of Puerto Rico.

The district court gave lengthy and detailed instructions on liability. The specific *Mt. Healthy* instruction was:

jointly and severally; Miguel Collazo Gonzalez was awarded $8,000 in compensatory damages against all three defendants, jointly and severally; Hector R. Rodriguez Estrella was awarded compensatory damages of $25,000 and $10,000 in punitive damages against Modesto Castro Davila; Roberto Figueroa del Valle was awarded compensatory damages of $40,000 against all three defendants, jointly and severally, and punitive damages of $15,000 against Modesto Castro Devila and punitive damages of $10,000 against Bernaldo de Jesus Diaz; Pablo Cruz Soto was awarded $15,000 in compensatory damages against all three defendants, jointly and severally; Ivette Santiago Negron was awarded $20,000 in compensatory damages against Modesto Castro Davila and Judith Velazquez Delgado, jointly and severally, and punitive damages of $10,000 against Modesta Castro Davila and punitive damages of $5,000 against Judith Velazquez Delgado; Wanda I. Rosa Flores was awarded $10,000 in compensatory damages against Modesto Castro Davila.

1. We equate this with "personally."

2. Two of the original plaintiffs took voluntary nonsuits with prejudice.

3. There is no mention of the Commonwealth in the pretrial order, so we assume it was dropped as a defendant. At some time, apparently before trial started, a default judgment was issued against the President of the Municipal Assembly, Rodriguez Morales, for failure to answer the complaint. He has not appealed.

4. In response to a question asking whether the defendants' actions followed the official policy of the Municipality, the jury answered "No." In the final judgment form, the court dismissed the municipality as a defendant.

5. The jury verdicts were as follows: Rogue Castro Hernandez was awarded $25,000 in compensatory damages against all three defendants,

Plaintiffs must prove that their political affiliation was a motivating factor in the decision to separate them from the positions they occupied, or in the case of those that were not fully separated, for the personal [sic] action that was taken. Isolated evidence that one party or the other was of a given political party, should not be enough. You must look at all the evidence, direct and circumstantial, to determine if political affiliation was a motivating factor.

Notwithstanding this fact, you may find for defendants, if they prove the existence of other grounds that would have been bona fide grounds for the personnel action, even in the absence of the alleged politically discriminatory motive.

Standing alone, this instruction might not pass muster under *Mt. Healthy* with flying colors, but the court had already instructed the jury on the burden of proof and that it should find for the defendants if there were bona fide grounds for the actions taken "even in the absence of the alleged politically discriminatory motive." This last sentence is, of course, a rephrasing of the Court's statement in *Mt. Healthy* that one of the prongs of the test is whether the defendant has shown by a preponderance of the evidence "that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct." 429 U.S. at 287, 97 S.Ct. at 576. Viewing the charge as a whole, as we must, we find no error in the *Mt. Healthy* instruction.

We next consider the failure of the district court to give two requested instructions:

### NULLITY OF APPOINTMENTS

Puerto Rican Law Establishes a series of mechanisms such as:

1. Public Notice of the Opportunities of Employment.
2. The Public Notice shall contain a description of the employment opportunity and be published at least ten (10) days before the final day to apply.
3. Applicants must take an examination for the positions.

4. Selection shall be from a certified list of eligibles.

These requirements stem from the need of making the employee selection process as fair and equitable as possible in order to employ the best qualified persons. Whoever is occupying the position of Mayor of a town is bound to follow the guidelines established under the applicable personnel regulations regarding selection of personnel, if those regulations are not followed, the appointments are illegal and void and said employees are subject to summary dismissals.

### NONCOMPLIANCE WITH RECRUITMENT PROCEDURES

If an employee is not recruited in strict compliance with the required procedures for recruitment and selection under the law, then that employee's appointment is and has always been null and void, and therefore that person may not claim the protection of the law in case of dismissal.

One of the defenses raised was that none of the plaintiffs had been hired in accord with the personnel laws and regulations of the Commonwealth. The district court refused to give the requested instructions because the evidence showed that Las Piedras, along with other small municipalities, did not follow the law in hiring municipal employees. In rejecting the instructions, the judge stated:

THE COURT: Because the problem is, I firmly believe that the law cannot be applied in a vacuum. The law must be applied taking into consideration what really happens in this world. And if this is the situation that this Municipality was in, I suppose, that reasonable men may say, that even though that is the case, and in a classroom exercise you would be correct.

However, some people may agree that even under those circumstances, these persons may be entitled to their rights, because that was the pattern of conduct, the custom in the Municipality.

The district court did, however, instruct the jury on the personnel laws of Puerto Rico and their applicability to municipalities. The jury was told that, under the laws that went into effect on October 14, 1975, and June 18, 1980, no provision was made for "irregular" employees (wage earners hired on an hourly rate basis), a category into which some of the plaintiffs belonged. The judge then went on to state that, even if the guidelines established by the Supreme Court of Puerto Rico in May of 1982 explicitly forbade the hiring of "irregulars," the practice continued.

The court then instructed the jury on how career employees should be hired, trained and promoted. The following instruction was given.

The law contains—and this part, this instruction is important, all instructions are important, but this is particularly important, because of the situation that we found in this case. The law contains optimum standards which should be complied with. These include public notice of opportunity of employment, the taking of examinations for career positions, selections from a certified list of eligible candidates, all to make the employee selection process as fair and equitable as possible, in order to employ the best qualified persons.

In this particular case, the evidence shows that these principles were not followed strictly by the prior political administration of the Municipality of Las Piedras and that the present administration, up to this date, has not complied with local laws in that respect. Under those circumstances, you must consider this situation in passing judgment and in determining whether, in light of the evidence received by you, and in light of these instructions, the personal [sic] actions in this case were legal or illegal.

We have several comments. First, defendants did not object specifically to this instruction; their objections focused on the

failure to give the requested "nullity" and "noncompliance" instructions. Second, the instruction had a solid evidentiary foundation. There was uncontradicted testimony that the pertinent personnel laws of the Commonwealth were honored more in the breach than in the observance of Las Piedras, as well as other small Puerto Rico municipalities. Third, there was no specific finding, nor did either party ask for one, as to how many of the plaintiffs were hired in contravention of the applicable personnel laws of Puerto Rico. Based on the instructions and the failure of any of the plaintiffs to claim that his or her hiring was in accord with Puerto Rico law, we can only infer that all of the plaintiffs were, in the technical sense at least, hired illegally.

The thrust of appellants' argument is that since plaintiffs were not hired in conformity with Puerto Rico laws and personnel regulations, their appointments were nullities *ab initio* and they could not be discharged or discriminated against because they had no legal existence as municipal employees. In support of their position, appellants rely on Puerto Rico law and a First Circuit case decided after the judgment in this case.

They point first to Article 4 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 4 (1902), which expressly provides: "Acts executed contrary to the provisions of law are void except when the law preserves their validity." Appellants then cite cases referring directly or indirectly to the language of the Code. None of these cases, however, covers the situation presented here: municipal employees hired illegally and subsequently fired for purely political reasons in violation of their first amendment rights. The issue in all of them was whether the personnel laws had been violated by the appointing authority rendering the appointments "null and void." [6] It is true that the words "null and void" and "null *ab initio*" are used in the opinions, but the

**6.** The main case relied on by appellants is *Ortiz v. Mayor of Aguadilla,* 107 D.P.R. 819 (1978) (7 Official Translations of the Supreme Court of Puerto Rico, p. 890). In *Ortiz,* the court upheld the removal of a municipal employee whose status had been changed from transitory to permanent in violation of the Puerto Rico Personnel Act. The Court held that the appointment was "null and void."

meaning of these phrases must be derived from the context of the case in which they are used. They do not have a life of their own and cannot be transferred bodily to a situation involving different facts.

In *Kauffman v. Puerto Rico Telephone Co.,* 841 F.2d 1169 (1st Cir.1988), we upheld the ruling of the district court (Judge Laffitte) "that under Puerto Rico law any property right associated with a career position is rendered null and void if a violation of the Personnel Act attends the filling of such a position." *Id.* at 1173. We came to this conclusion after a careful examination of the pertinent Puerto Rico cases. We also upheld the district court's summary judgment determination that "the plaintiffs had failed to generate a genuine issue of material fact regarding their claim that their discharges were politically motivated." *Id.* at 1172. We did not discuss the first amendment claim at all. *Kauffman,* therefore, stands only for the proposition that if a government employee is hired in violation of the Personnel Act of Puerto Rico, he or she has no property interest in the position and, hence, no due process right to a hearing before discharge. *Id.* at 1173–74.

There is a distinct difference, however, between a municipal employee's fifth amendment right to a due process hearing on termination and the employee's first amendment right to free political speech and association. In *Perry v. Sindermann,* 408 U.S. 593, 597–98, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972), the Court held:

> [T]he respondent's lack of a contractual or tenure "right" to re-employment for the 1969–1970 academic year is immaterial to his free speech claim. Indeed, twice before, this Court has specifically held that the nonrenewal of a nontenured public school teacher's one-year contract may not be predicated on his exercise of First and Fourteenth Amendment rights. *Shelton v. Tucker, supra* [364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960) ]; *Keyishian v. Board of Regents, supra* [385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967) ]. We reaffirm those holdings here.

And in *Branti v. Finkel,* 445 U.S. at 512 n. 6, 100 S.Ct. at 1291 n. 6, the Court stated: "After *Elrod,* it is clear that the lack of a reasonable expectation of continued employment is not sufficient to justify a dismissal based solely on an employee's private political beliefs." (citing *Elrod v. Burns,* 427 U.S. at 360 n. 13, 96 S.Ct. at 2683 n. 13). *See also Cheveras Pacheco v. Rivera Gonzalez,* 809 F.2d 125, 127–28 (1st Cir.1987). In *Roure v. Hernandez Colon,* 824 F.2d 139, 141 (1st Cir.1987), we pointed out that Puerto Rico law is not controlling in the area of first amendment law: "Defendants' position that the appointments were void, even if correct as a matter of Puerto Rico law, does not establish that defendants are entitled to qualified immunity with respect to plaintiffs' First Amendment claims."

■ Plaintiffs were hired by the Municipality, worked for it, and were paid by it. Regardless of whether they were hired in accord with the personnel laws of Puerto Rico, they were municipal employees. We do not think that a new administration can use the "nullity" of appointments doctrine as a cover for discharges, transfers, and discrimination based solely on political affiliation. The instructions given on the applicability of the personnel laws of Puerto Rico were, therefore, irrelevant to the first amendment claim. If irrelevancy connotes error, the error was harmless.

■ The instructions, however, were relevant to the due process claim. The district court told the jury that the plaintiffs might have a property interest in their jobs and, if the jury found that plaintiffs did have such an interest, they were entitled to a predischarge hearing. The instruction was worded so that the jury could have found that plaintiffs had such a property interest even though they were hired in violation of the personnel laws. *Supra* at 435. In light of our decision in *Kauffman* and because it appears that none of the plaintiffs had been hired in conformity with the personnel laws of Puerto Rico, this instruction was error. It was also error for the court to have submitted a special question to the jury in the case of each

plaintiff: "Do you find that the procedural rights of this employee were respected or violated?" In each case, the jury found that the rights of the employee were violated.

We do not think that the due process instruction and the related jury question nullify the jury's finding that the plaintiffs were discharged because of their political affiliation. That part of the verdict will stand. We do find, however, that the finding of a due process violation by the jury might well have influenced its assessment of damages, both compensatory and punitive. It would be reasonable and logical for the jury to include in both their compensatory and punitive damages awards an amount for what they found to be clear violations of the plaintiffs' constitutional due process rights. Appellants asked for jury instructions that bore directly on this issue, which were denied. Because the court's instructions could have led the jury into error in the assessment of compensatory and punitive damages there must be a new trial on the issue of damages.

## II. REINSTATEMENT AND AWARD OF BACK PAY BY THE DISTRICT COURT

 The question of reinstatement does not pose a problem. Appellants' position on reinstatement is essentially the same as their attack on the jury instructions: since plaintiffs' appointments were not made pursuant to the Puerto Rico personnel laws, they were void *ab initio* and the district court could not reinstate them. This contention is based on the premise that since the plaintiffs never existed as municipal employees, reinstatement was not possible. We reject this Kafka-like logic. As already indicated, the failure of a municipality to follow the law in hiring employees does not make such employees fair game for political discrimination by a subsequent administration. One of the remedies available for a political discharge

in violation of first amendment rights is reappointment.

We now turn to the more difficult question of whether it should be the judge or jury who awards back pay in a section 1983 case based upon an alleged unconstitutional political discharge where a jury will determine liability and compensatory damages. This is a question of first impression in this circuit.[7]

Most of the courts of appeals that have grappled with the problem have focused on the nature of the relief sought: equitable or legal. The Sixth Circuit formulated the classic test in *Hildebrand v. Board of Trustees of Michigan State University*, 607 F.2d 705, 708 (6th Cir.1979) (citation and footnote omitted):

> The above-cited authorities mandate that the chief focus to be made when determining whether a jury trial right exists is the nature of the relief sought. If the remedy sought is injunctive relief and/or back pay, no jury trial right attaches. In the ordinary case, if the relief sought includes compensatory and/or punitive damages, then there does exist a right to trial by jury.

This reasoning was carried to its logical conclusion in *Moore v. Sun Oil Company of Pennsylvania*, 636 F.2d 154 (6th Cir. 1980), in which it was held in a 42 U.S.C. § 1981 action that even though reinstatement was not sought, back pay was equitable relief and the parties were not entitled to a jury trial on that issue. The court then went on to hold that since compensatory and punitive damages were legal relief, plaintiff had a right to a jury trial on those claims.

The rule in the Eleventh Circuit also is grounded on the nature of the remedy sought.

> The district court was correct in holding that appellant's claims were equitable and therefore not the proper subject of a jury trial. Appellant seeks reinstatement, backpay and reimbursement

---

7. In our ensuing discussion, we assume that one or the other party has claimed a jury trial in the appropriate manner, *see* Fed.R.Civ.P. 38(b), (c), and not thereafter withdrawn it. If no such

demand is in effect, then any right to a jury trial is deemed waived, Fed.R.Civ.P. 38(d), and no party can legitimately object to the judge deciding the claim for back pay.

for "other lost professional benefits," all of which are equitable whether sought under Title VII or section 1983. *Harkless v. Sweeny Independent School District*, 427 F.2d 319, 323–24 (5th Cir.1970), *cert. denied*, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971); *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1125 (5th Cir.1969).

*Sullivan v. School Board of Pinellas County*, 773 F.2d 1182, 1187 (11th Cir.1985) (footnote omitted).

The Ninth Circuit in a combination Title VII and 42 U.S.C. § 1981 case held that section 1981 provides both legal and equitable remedies, and that the legal remedies include compensatory and punitive damages which carry with them the right to a jury trial. Back pay is characterized as "either equitable or as a legal remedy incidental to an equitable cause of action, and accordingly not sufficient to create a right to a jury trial." *Williams v. Owens–Illinois, Inc.*, 665 F.2d 918, 929 (9th Cir.) (footnote omitted), *cert. denied*, 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982).

In *Bertot v. School District No. 1, Albany County*, 613 F.2d 245, 250 (10th Cir. 1979), the Tenth Circuit held that back pay was an element of equitable relief and was not precluded by a good faith defense. *But cf. Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439 (10th Cir.1988) (where trial is both to jury and court due to presence of both equitable and legal issues, seventh amendment requires that essential factual issues central to both must first be tried to the jury. In combination Title VII and § 1981 case, jury determination of back pay award in the § 1981 case must be accepted by court in the Title VII case, if supported by the evidence.).

In a political affiliation-discharge case, the Third Circuit held that a "party seeking compensation or other legal relief under 42 U.S.C. § 1983 has a right to a jury trial ... although the request for back pay under section 1983 seeks only equitable relief." *Laskaris v. Thornburgh*, 733 F.2d 260, 263

(3d Cir.), *cert. denied*, 469 U.S. 886, 105 S.Ct. 260, 83 L.Ed.2d 196 (1984).

The only circuit, as far as we can determine, that has explicitly found back pay to be legal damages is the Eighth. *Setser v. Novack Investment Co.*, 638 F.2d 1137 (8th Cir.), *cert. denied*, 454 U.S. 1064, 102 S.Ct. 615, 70 L.Ed.2d 601 (1981) [8] was a section 1981 case in which the plaintiff sought back pay, other compensatory damages, and punitive damages. Reinstatement was not sought. The issue was whether plaintiff was entitled to a jury trial on the claim of back pay. After a review of the case law, the court held that back pay determinations "are inherently in the nature of legal damages and require a jury trial." *Id.* at 1142.

In contrast to the other circuits, the Seventh Circuit has blithely ignored the problem or decided that none existed. In that circuit, back pay is routinely submitted to the jury in § 1983 cases. And, at least in the cases we have read, there is no discussion of equitable versus legal relief. *See Webb v. City of Chester, Ill.*, 813 F.2d 824, 836 (7th Cir.1987); *Crawford v. Garnier*, 719 F.2d 1317, 1324 (7th Cir.1983); *Nekolny v. Painter*, 653 F.2d 1164, 1166 (7th Cir.1981), *cert. denied*, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982).

Although the Supreme Court has not squarely addressed the question, we find its opinions in the general area instructive. The Court has always zealously guarded the factfinding function of the jury: "Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Dimick v. Schiedt*, 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935). In *Beacon Theatres v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), the issue was whether *Beacon* was improperly deprived of a jury trial on factual issues when the district court ordered that the facts common both to Beacon's anti-trust claims against Fox Theatres and

---

**8.** Prior to the time that the order denying certiorari issued, the case was heard en banc as to a portion not relevant to this issue. 657 F.2d 962 (8th Cir.1981).

Fox's complaint for declaratory relief be tried first to the court. The Court pointed out that "this might, through collateral estoppel, prevent a full jury trial of the counterclaim and crossclaim [of Beacon] which were as effectively stopped as by an equity injunction." *Id.* at 505, 79 S.Ct. at 954. In discussing the difference between equitable and legal relief, the Court observed: "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Id.* at 506–07, 79 S.Ct. at 954. The Court held:

> If there should be cases where the availability of declaratory judgment or joinder in one suit of legal and equitable causes would not in all respects protect the plaintiff seeking equitable relief from irreparable harm while affording a jury trial in the legal cause, the trial court will necessarily have to use its discretion in deciding whether the legal or equitable cause should be tried first. Since the right to jury trial is a constitutional one, however, while no similar requirement protects trials by the court, that discretion is very narrowly limited and must, wherever possible, be exercised to preserve jury trial.

*Id.* at 510, 79 S.Ct. at 956 (footnote omitted).

The next case we find significant is *Dairy Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). This was a trademark case in which the district court had denied petitioner's demand for jury trial on the alternative grounds that either the action was purely equitable or if not completely equitable, any legal issues raised were incidental to the equitable issues. *Id.* at 470, 82 S.Ct. at 896. The Court commenced its discussion by stating:

> At the outset, we may dispose of one of the grounds upon which the trial court acted in striking the demand for trial by jury—that based upon the view that the right to trial by jury may be lost as to legal issues where those issues are characterized as "incidental" to equitable issues—for our previous decisions make it plain that no such rule may be applied in the federal courts. In *Scott v. Neely*

[140 U.S. 106, 11 S.Ct. 712, 35 L.Ed. 358], decided in 1891, this Court held that a court of equity could not even take jurisdiction of a suit "in which a claim properly cognizable only at law is united in the same pleadings with the claim for equitable relief."

*Id.* at 470–71, 82 S.Ct. at 896 (footnote omitted). The Court reiterated the point it had made in *Beacon Theatres:*

> But the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings. The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is, as we pointed out in *Beacon Theatres,* the absence of an adequate remedy at law.

*Id.* at 477–78, 82 S.Ct. at 900 (footnote omitted).

In *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), the court reversed the holding of the Court of Appeals that the seventh amendment right to a jury trial does not extend to any issues in derivative actions brought by the stockholders of a corporation. The Court held, "that the right to jury trial attaches to those issues in derivative actions as to which the corporation, if it had been suing in its own right, would have been entitled to a jury." *Id.* at 532–33, 90 S.Ct. at 735. The following footnote outlines the nature of the inquiry in determining whether an issue is legal or equitable:

> As our cases indicate, the "legal" nature of an issue is determined by considering, first, the pre-merger custom with reference to such questions; second, the remedy sought; and, third, the practical abilities and limitations of juries. Of these factors, the first, requiring extensive and possibly abstruse historical inquiry, is obviously the most difficult to apply. See James, Right to a Jury Trial in Civil Actions, 72 Yale L.J. 655 (1963).

*Id.* at 538 n. 10, 90 S.Ct. at 738 n. 10. The Court pointed out:

> Actions are no longer brought as actions at law or suits in equity. Under the

Rules there is only one action—a "civil action"—in which all claims may be joined and all remedies are available. Purely procedural impediments to the presentation of any issue by any party, based on the difference between law and equity, were destroyed.... Under the rules, law and equity are procedurally combined; nothing turns now upon the form of the action or the procedural devices by which the parties happen to come before the court. The "expansion of adequate legal remedies provided by ... the Federal Rules necessarily affects the scope of equity." *Beacon Theatres, Inc. v. Westover*, 359 U.S., at 509 [79 S.Ct. at 956].

*Id.* at 539–40, 90 S.Ct. at 739.

The most recent case in this area is *Tull v. United States*, 481 S.Ct. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987).[9] The question was,

whether the Seventh Amendment guaranteed petitioner a right to a jury trial on both liability and amount of penalty in an action instituted by the Federal Government seeking civil penalties and injunctive relief under Clean Water Act, 62 Stat. Ch. 758, as amended, 33 U.S.C. § 1251, *et seq.*

*Id.* 107 S.Ct. at 1833. The Court examined "both nature of the action and the remedy sought." *Id.* at 1835. In the course of determining the nature of the action the Court stated:

We need not rest our conclusion on what has been called an "abstruse historical" search for the nearest 18th–century analogue. See *Ross v. Bernhard*, 396 U.S., at 538, n. 10, 90 S.Ct., at 738, n. 10. We reiterate our previously expressed view that characterizing the relief sought is "[m]ore important" than finding a precisely analogous common law cause of

action in determining whether the Seventh Amendment guarantees a jury trial. *Curtis v. Loether*, 415 U.S. [189], at 196, 94 S.Ct. [1005], at 1009 [39 L.Ed.2d 260 (1974)].

*Id.* at 1837 (footnote omitted). The Court found that the assessment of civil penalties did not "involve the 'substance of a common-law right to trial by jury', nor a 'fundamental element of a jury trial.'" *Id.* at 1840. In holding that the jury determines liability and the trial court assesses the penalty, the Court noted: "In this case, highly discretionary calculations that take into account multiple factors are necessary in order to set civil penalties under the Clean Water Act. These are the kinds of calculations traditionally performed by judges." *Id.* at 1840 (citation omitted).

Following the teachings of the Court we look to the nature of the action and the relief sought. There can be no doubt that § 1983 actions create tort liability with damages determined under the common law of torts.

We have repeatedly noted that 42 U.S.C. § 1983 creates " 'a species of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253 [98 S.Ct. 1042, 1047, 55 L.Ed.2d 252] (1978), quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 [96 S.Ct. 984, 988, 47 L.Ed. 2d 128] (1976). See also *Smith v. Wade*, 461 U.S. 30, 34 [103 S.Ct. 1625, 1628, 75 L.Ed.2d 632] (1983); *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 258–259 [101 S.Ct. 2748, 2755–2756, 69 L.Ed.2d 616] (1981). Accordingly, when § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common

9. We are aware that in *Bowen v. Massachusetts*, —— U.S. ——, 108 S.Ct. 2722, 2731–32, 101 L.Ed. 2d 749 (1988), the Court restated the longstanding principle that an equitable action for specific relief may include an order for reinstatement with back pay. The issue in *Bowen* was whether a district court had jurisdiction to review a final order of the Secretary of Health and Human Services refusing to reimburse a state for a category of expenditures under its Medicaid

program. The Court's statement was made as part of its explanation of why there could be judicial review of the Secretary's disallowance decision. The Court pointed out that the complaint sought declaratory and injunctive relief, not money damages. Because of the nature of the action, there could be no jury trial. We do not think that the statement is relevant to the issue before us.

law of torts. See *Smith v. Wade, supra* [461 U.S.] at 34 [103 S.Ct. at 1628]; *Carey v. Phiphus, supra* [435 U.S.] at 257–258 [98 S.Ct. at 1049]; cf. *Monroe v. Pape*, 365 U.S. 167, 196, and n. 5 [81 S.Ct. 473, 488, and n. 5, 5 L.Ed.2d 492] (1961) (Harlan, J., concurring).

*Memphis Community School District v. Stachura*, 477 U.S. 299, 305–06, 106 S.Ct. 2537, 2542, 91 L.Ed.2d 249 (1986) (footnote omitted).

■ In tort actions for personal injury tried to a jury, lost wages are invariably treated as being part of compensatory damages. Unlike the calculations required to assess the civil penalty in *Tull*, the computation of back pay normally requires only the addition (or multiplication) of a fixed sum. To paraphrase *Tull*, these are the kinds of calculations traditionally performed by juries. *See* 107 S.Ct. at 1840. Our analysis leads us to conclude that the determination of back pay as a factor of compensatory damages involves the substance of a common-law right to a trial by jury. *See Tull*, 107 S.Ct. at 1840.

In addition to the seventh amendment implication, there is also a sound practical reason for having the jury factor in back pay when determining compensatory damages. Submission of the issue of back pay to the jury as a factor to be considered in its award of compensatory damages eliminates the inevitable overlap between compensatory damages and back pay. In most cases of an alleged unconstitutional firing, there will be evidence of the employee's pay. To expect a jury to ignore this is unrealistic, especially where it may constitute the major item of compensatory damages. This case illustrates this point, see discussion *infra* at pp. 441–442.

■ Applying the analysis mandated by the Supreme Court, we hold that in a § 1983 case based upon an alleged unconstitutional political firing where the issues of liability and compensatory damages will be determined by a jury, back pay shall be considered by the jury as one of the items of compensatory damages. We are con-

strained to add that we are not dissolving the traditional legal-equitable dichotomy. Where only reinstatement and back pay are requested or if they are the only issues, in addition to liability, remaining in the case then both reinstatement and back pay shall be for the court. Since this rule is contrary to the procedure followed by some district courts in this circuit, it shall be given prospective effect only.[10] We, therefore, affirm the procedure followed in this case.

That, however, does not end the matter. We agree with appellants that the court's instructions on compensatory damages could well have resulted in duplicative damages. The jury was not told until after it returned its verdict that the court would order back pay. The instructions on compensatory damages were as follows:

> If you find that any plaintiff is entitled to damages, you may consider the following: Plaintiffs' physical condition prior to the personnel action, plaintiffs' emotional condition prior to the personnel action, plaintiffs' ability to work and earn a living prior to the personnel action, plaintiffs' physical and emotional condition and ability to engage in gainful activities after the personnel action.

> In listing these items, I do not intend to imply that your consideration should be confined to these elements only, nor should you consider any one of them, if you find that there has been no evidence on that point. *You should carefully and impartially consider all the matters in evidence, which will assist you in determining the extent of plaintiffs' injuries, if any.* You can also consider pain and suffering resulting from the alleged violations of civil rights and the effect or lack, thereof, this may have had, or may have in the future. [Emphasis added.]

Although the jury was not told to include back pay as an item of compensatory damages, neither was it told not to do so. The evidence was permeated with references to plaintiffs' lost wages, including documenta-

**10.** The rule shall apply in cases pending on direct appeal where the appealing party has

properly preserved an objection to the judge's preemption of the issue.

ry evidence of employment records. The sentence beginning "You should carefully and impartially consider all the matters in evidence," could well have been construed to pertain to the evidence of lost wages, especially in the absence of any admonition not to do so. As a matter of common sense and logic, the jury could reasonably conclude that back pay was one of the items to be factored into the award of compensatory damages. At the new trial, back pay must, of course, be determined by the jury.

### III. THE VERDICT IN THE CASE OF HECTOR R. RODRIGUEZ ESTRELLA

The district court submitted special verdicts to the jury for each plaintiff. The special verdicts consisted of a short statement of the claim of each plaintiff and a series of questions. In order to understand this issue, a portion of the verdict form for plaintiff Hector R. Rodriguez Estrella and the pertinent jury answers to the interrogatories must be reproduced.

**Hector R. Rodriguez Estrella** was the official collector of the Municipality of Las Piedras. He claims to be a career employee. The defendants claim that he was a confidential or trust employee.

23. Was Hector R. Rodriguez Estrella a career employee? Answer Yes or No. Place an "X" next to your answer.

___YES.

_X_NO.

If you answered this question in the negative, then answer question No. 24.

24. Assuming for the purposes of this question that Mr. Rodriguez–Estrella was a trust employee, do the particular responsibilities of the position of official collector require that political party affiliation be an appropriate requisite for the effective performance of the public office involved? Answer Yes or No. Place an "X" next to your answer.

_X_YES

___NO.

Despite the answers to these questions, which constituted a finding of no liability, the jury went on to answer a series of questions finding that Rodriguez had been dismissed because of political discrimination and assessing compensatory damages of $25,000 and punitive damages of $10,000 against the Mayor.

After the court received the verdict form from the jury, there was an off-the-record discussion with counsel. The court then stated to the jury:

THE COURT: Members of the Jury, I have examined the verdict form and everything that you found is consistent, one question with the others on all plaintiffs, except that in the case of Mr. Rodriguez Estrella, I find that there is an inconsistency. I have discussed it with counsel. And they are in agreement, there is an inconsistency. And even though the Court has the power to pass upon that inconsistency, as a matter of law, I believe that I should give you an opportunity of examining that inconsistency.

The court then gave additional instructions to the jury and went over the special verdict questions pointing out that the answers to questions 23 and 24 were inconsistent with the succeeding questions and answers finding that Rodriguez Estrella's rights were violated and assessing compensatory and punitive damages against Mayor Castro Davila.

The court then told the jury:

Apparently the mistake was mine, in the sense that I should have indicated in an instruction, right after Question 24, I should have put in a note that says, "Note: If you answer this question in the negative, do not answer questions 25, 26, 27, 28, 29, 30, 31, 32 and 33."

What I intend to do is this: I am going to add, in red ink, an instruction, after question 24, that will read as follows: "Note: If you answer Question Number 24 in the affirmative, do not answer questions 25 to 33." However, if you decide otherwise, then you have to answer those questions, which you already did. And the remaining answers will be consistent.

What I will do is, I will ask you to go back and deliberate on this matter and I will read that instruction again to you.

And if there is any correction to be made, you don't have to make any. You will do what you think is best. You are the judges of the facts. You will—so we don't change the verdict form—you will do it in red ink, with this red pen I'm going to give you, if there is any change to be made.

When the verdict form was returned to the court after further deliberations, the jury had changed its answers to questions 23 and 24. It now found in answer to number 23 that Rodriguez Estrella had been a career employee and consistent with that answer, the jury did not answer question 24.

It is appellant's contention that on the basis of the pleadings, the issues originally submitted to the jury, and the first set of jury instructions there was no inconsistency in the answers the jury gave to the special verdict questions. We start our analysis with a review of basic and long-standing principles. In *Gallick v. Baltimore & Ohio R. Co.*, 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963), the Court held that "it is the duty of the courts to attempt to harmonize the answers [to special interrogatories] if it is possible under a fair reading of them." It quoted the holding of *Atlantic & Gulf Stevedores Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962): "Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *See McIsaac v. Didriksen Fishing Corp.*, 809 F.2d 129, 133 (1st Cir.1987); *Goeken v. Kay*, 751 F.2d 469,

485 (1st Cir.1985); *Mashpee Tribe v. New Seabury Corp.*, 592 F.2d 575, 590 (1st Cir.), *cert. denied*, 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 90 (1979), *cert. denied*, 464 U.S. 866, 104 S.Ct. 205, 78 L.Ed.2d 178 (1983). This is the law that applies to Rule 49(a), the applicable rule here, which unlike Rule 49(b) has no provision for the procedure to follow when there are inconsistent answers.[11] The first thing we must determine, therefore, is whether the first answers can be made consistent under any view of the case.

Appellants' consistency argument is simple: in its first set of answers, the jury found defendants not liable by the answers to questions 23 and 24; therefore, the other answers should be disregarded. We do not think that consistency can be achieved by considering only part of the answers. The answer to question 25 found that Rodriguez Estrella had been discharged because of political discrimination, the answer to question 26 found that the procedural rights of the plaintiff were violated, and the answer to question 27 found that the Mayor violated the rights of the plaintiff.[12] There was, therefore, an irreconcilable inconsistency on the issue of liability, leaving aside the answers assessing compensatory and punitive damages. There is no view of the case that would force the answers on the liability questions into a consistent mold. Since we find the answers to the special verdict questions inconsistent under any view of the case, we must next decide whether the resubmission of the questions to the jury was permissible.

11. Rule 49(b), which provides for a general verdict form accompanied by interrogatories, states in relevant part: "When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial."

12. The questions and answers were:
 25. What was the real motive for the dismissal of Mr. Rodriguez–Estrella? Place an "X" next to your answer.
 ___A. Just cause.
 _X_B. Political discrimination.

 26. Do you find that the procedural rights of this employee were respected or violated? Place an "X" next to your answer.
 ___A. The rights of the employee were respected.
 _X_B. The rights of the employee were violated.
 *Note:* If you answered question No. 26 by selecting alternative "B", please answer question No. 27.
 27. Which of the defendants violated the rights of Hector R. Rodriguez Estrella? Place an "X" next to your answer.
 _X_A. Mayor Modesto Castro Davila
 ___B. Judith Velazquez Delgado

As already noted, in contrast to Rule 49(b), Rule 49(a) does not explicitly provide for a resubmission to the jury based on inconsistency. But neither does it prohibit such a procedure. In *Atlantic Tubing & Rubber Co. v. International Engraving Co.*, 528 F.2d 1272, 1276 (1st Cir.), *cert. denied*, 429 U.S. 817, 97 S.Ct. 60, 50 L.Ed. 2d 77 (1976), we stressed that a district court has "considerable discretion" in applying the principles of *Gallick* and *A & G Stevedores* and "[t]his discretion encompasses the power to refuse to accept the jury's answers to special interrogatories."

The Fifth Circuit has approved resubmission under similar circumstances. In *Landry v. Offshore Logistics, Inc.*, 544 F.2d 757, 760–61 (5th Cir.1977), the jury in its original verdict had stated in answer to a question that plaintiff was not contributorily negligent. In its answer to the next question, it found that plaintiff's negligence contributed to the accident in the amount of 75%. The questions were resubmitted to the jury and the 75% negligent finding was erased. The court rejected appellant's argument that there should have been a mistrial and resubmission to the jury coerced the verdict, stating:

> This was simply a case in which, obviously by inadvertence, the jury fell into an inconsistency with reference to one aspect of its verdict. The verdict had not been accepted. The jury had not been discharged. Counsel was present, making no inquiry and raising no objection. The jury quickly eliminated the one inconsistent answer. We can perceive of no sound reason for allowing this episode to abort the trial, necessitating a third trial of this case.

*Id.* at 761. In *Nance v. Gulf Oil Corp.*, 817 F.2d 1176 (5th Cir.1987), the court, in approving resubmission, justified its decision on the basis of both the seventh amendment and Rule 49(a):

> Because the answers in the first verdict were irreconcilable, there was no seventh amendment violation by the resubmission of the verdict form The seventh amendment only requires a court to adopt a jury's verdict if the answers to the interrogatories in the verdict are consistent or if there is some view of the case which would make the jury's answers to the interrogatories consistent.
>
> Gulf [defendant] maintains that even if the jury's answers to the interrogatories were irreconcilable, the district court should have ordered a new trial rather than resubmit the verdict form since a Rule 49(a) verdict form cannot be resubmitted to the jury to resolve inconsistencies. Contrary to Gulf's assertions, Rule 49(a) does not prohibit resubmission of a 49(a) verdict form. "While Rule 49(a) unlike 49(b) does not provide for resubmission" of a verdict form, Rule 49(a) certainly does not preclude resubmission.

*Id.* at 1178 (footnotes omitted).

We think the approach of the Fifth Circuit makes good sense. The district court should have discretion to resubmit inconsistent answers to special verdict questions submitted under Rule 49(a) in the following circumstances: where the answers are inconsistent under any view; where the attorneys are or should be present; and, of course, where the jury has not been discharged. We realize that the Fourth Circuit in *McCollum v. Stahl*, 579 F.2d 869, 871 (4th Cir.1978), *cert. denied*, 440 U.S. 912, 99 S.Ct. 1225, 59 L.Ed.2d 460 (1979) has held as a matter of law that the resubmission of questions under Rule 49(a) is not permissible because no provision is made for such procedure in the rule. Such a strict interpretation of the rule can only result in new trials. Not only is justice delayed, but the parties are saddled with the cost of another round of litigation. So long as the court does not coerce a verdict, we see no harm, and much good, in allowing the jury to reconsider its inconsistent answers.

We have carefully reviewed the instructions given to the jury on resubmission and reject appellants' attack on the resubmission procedure and the court's instructions pursuant to that procedure.

Appellants' other objection to the answer given by the court to a question involving the effect to be given two documents is without merit and needs no discussion.

## IV. THE VERDICT FOR WANDA I. ROSA FLORES

The jury found in answer to questions 67 and 68 that Wanda I. Rosa Flores was transferred and eventually dismissed because of political discrimination and that her rights were violated. The next question and answer were:

69. Which of the defendants violated the rights of Wanda Rosa Flores? Plan an "X" next to your answer.

 X A. Mayor Modesto Castro Davila

 B. Rene Rodriguez Morales

 C. Judith Velazquez Delgado

The jury awarded Rosa Flores $10,000 in compensatory damages which were assessed against Mayor Castro Davila.

Castro Davila's main contention on appeal is that there was no causal connection between the actions taken against Rosa Flores and himself, that he was not the proximate cause of her transfers and eventual dismissal. We turn, therefore, to a review of the evidence.

Because the jury found for plaintiff, our review of the evidence must be made in the light most favorable to plaintiff, drawing all reasonable inferences in her favor and without evaluating the credibility of the witnesses or the weight of the evidence. *Forrestal v. Magendantz,* 848 F.2d 303, 305 (1st Cir.1988); *CVD, Inc. v. Raytheon Co.,* 769 F.2d 842, 848–49 (1st Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1198, 89 L.Ed.2d 312 (1986); *Computer Systems Engineering, Inc. v. Qantel Corp.,* 740 F.2d 59, 65 (1st Cir.1984). This does not mean, however, that we can ignore uncontradicted evidence offered by the opposing party. *Layne v. Vinzant,* 657 F.2d 468, 472 (1st Cir.1981); *Allen Pen Co. v. Springfield Photo Mount Co.,* 653 F.2d 17, 19 (1st Cir.1981). Nor can we accept unreasonable inferences based on conjecture or speculation. *Goldstein v. Kelleher,* 728 F.2d 32, 39 (1st Cir.), *cert. denied,* 469 U.S. 852, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984); *Carlson v. American Safety Equipment Corp.,* 528 F.2d 384, 386 (1st Cir.1976). The pertinent evidence, viewed against this background, is as follows.

Rosa Flores testified to the following effect. Both she and her family were active supporters of the NPP. On July 2, 1984, she was appointed a typist for the Municipal Assembly and, after a three-month probationary period, the Assembly unanimously voted to hire her as a permanent employee. At this time, Castro Davila was a member of the Municipal Assembly. The position of typist is classified as a career position.

In January of 1985, the newly elected President of the Municipal Assembly, Rene Rodriguez Morales, took office and his secretary, Mrs. Raquel Mendoza, became the immediate supervisor of Rosa Flores. Both Rodriguez Morales and Mrs. Raquel Mendoza were brusque in their treatment of Rosa Flores. She described them as being "very dry" towards her. Rosa Flores was not allowed to go to the bathroom alone, and when she took her morning breakfast break, she was always admonished by Mrs. Raquel Mendoza to "come back right away." Rosa Flores was not given any work to do, was denied access to files and documents of the Municipal Assembly, and was not allowed to touch any documents belonging to the Assembly.

In June of 1985, Rosa Flores received a letter from Rodriguez Morales advising her that there were no longer any Assembly funds to pay her and that he was asking the Mayor to relocate her in another position in the Municipal government. She went to see the Mayor, who said that he had no place to put her, but that he would send her to the Civil Defense Office. She remained at the Office of Civil Defense until September 3 when the President of the Municipal Assembly Rodriguez, "once again placed me back in the Municipal Assembly."

While she was at the Civil Defense Office, Flores was given no work to do and was not allowed to use the telephone either to make calls or answer them. She, along with her father, met with the Mayor on July 8, 1985, and she told him that she was unhappy at the way she was being treated. The Mayor told her that he would relocate

her to an "irregular" position. Addressing her father, the Mayor then said, "You have my word that your daughter is not going to lose her job." On July 12, she wrote the Mayor stating that she would not accept a transfer from her career position to that of an "irregular employee" and she understood that her rights would be violated if such a transfer were made. The Mayor replied by letter of August 16. The contents of the letter were not testified to and we have not been furnished a translation copy of it.

On September 3, Rosa Flores was informed that the President of the Municipal Assembly wanted to see her. She went to see him and he told her that under a layoff plan he was preparing she would be laid off in October. She was also told by Rodriguez that he was relocating her as a typist in the offices of the Municipal Assembly and that effective September 4, she had to render a daily report of all the work that she did for the Municipal Assembly. On September 4, she wrote a letter to Rodriguez in which she stated that she acknowledged his directive, that she considered it discriminatory, but that she would comply with it. The letter also requested that she be told in writing the daily duties and obligations that she had to carry out. Rodriguez gave her a written list of her duties on September 6.

On October 1, 1985, a memorandum was given to Rosa Flores. It was signed: "Hon. Rene Rodriguez, Chairman Municipal Assembly, Municipality of Las Piedras." The memorandum informed Rosa Flores that due to "lack of funds and/or work" she would be laid off as of November 4, 1985. She was also informed of her right to attend an informal hearing prior to the layoff and to appeal the layoff to the Appeals Board of the Personnel Management System within thirty days of the receipt of the memorandum.

The Mayor testified that he had not participated in the decision to lay off Rosa Flores and that he did not have the authority to either appoint or discharge employees of the Municipal Assembly. On cross-examination, he was asked whether Rene Rodriguez was the one who fired Wanda Rosa Flores and he answered "Yes." No other witnesses testified in Wanda Rosa Flores' case.

We have found nothing in the record from which it could be found that the Mayor had the authority to hire or discharge employees of the Municipal Assembly. The evidence shows clearly that Rosa Flores was hired by the Municipal Assembly of Las Piedras and laid off by the President of the Municipal Assembly, Rodriguez Morales. The discriminatory treatment she received was at the hands of Rodriguez and his secretary. It was Rodriguez who told her, in June of 1985, that there were no longer any funds to pay her and suggested she see the Mayor. The Mayor found a temporary job for her, but it was Rodriguez who transferred her back to the Municipal Assembly in September and told her what duties she had. And it was Rodriguez who laid her off. There is no evidence that the Mayor and Rodriguez ever discussed Rosa Flores.

We can find no causal link between the Mayor and the transfers and eventual dismissal of Rosa Flores. Appellee suggested that such a link can be forged from the facts that the Mayor and Rodriguez were friends and belonged to the same political party. We do not think that friendship and political affiliation without more can establish causation. Plaintiff Rosa Flores has not proved that the Mayor caused her transfers and dismissal. On the basis of the evidence, it could only be found that the person liable was Rodriguez Morales. The judgment for Rosa Flores against Mayor Castro Davila must be reversed.

AFFIRMED IN PART. REVERSED IN PART. REMANDED.

No costs on appeal.