# United States Court of Appeals
## For the First Circuit

No. 12-1412

MARGARET LONG; ALICE SMITH,

Plaintiffs,

v.

FAIRBANK RECONSTRUCTION CORP., d/b/a Fairbank Farms, Inc.,

Defendant/Third-Party Plaintiff, Appellee,

v.

GREATER OMAHA PACKING CO., INC.,

Third-Party Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Lynch, Chief Judge,
Selya and Stahl, Circuit Judges.

Richard L. Neumeier, with whom Joshua P. Briefel and Morrison Mahoney, LLP were on brief, for appellant.
Ralph A. Weber, with whom Paul C. Catsos, Thompson & Bowie, LLP, Shawn K. Stevens, and Gass Weber Mullins LLC were on brief, for appellee.

November 21, 2012

**Per Curiam**.  In this appeal, Greater Omaha Packing Company ("GOPAC") asks this court to vacate a jury's unanimous finding that GOPAC supplied Fairbank Reconstruction Corporation ("Fairbank") with E. coli-tainted beef, which Fairbank then packaged and shipped to two supermarkets in Maine, resulting in two women who bought meat there becoming seriously ill.  There is no basis to upset the jury's verdict, and we affirm.

## I.

GOPAC is a beef slaughtering and processing company, located in Omaha, Nebraska, that ships millions of pounds of beef each day to other meat processors throughout the country.  One of GOPAC's products, known as a "combo," is a container filled with two thousand pounds of meat and fat.  Fairbank, a meat processing company, purchases combos from GOPAC and other suppliers; it then grinds and packages the combo meat and fat into retail-size packages of ground beef.

In the fall of 2009, thirty-two people in the northeastern United States were sickened by an outbreak of E. coli.  The infections were traced to Fairbank's Ashville, New York facility, which ultimately had to recall approximately 500,000 pounds of ground beef.  Two of the people infected in the outbreak, Margaret Long and Alice Smith, had purchased retail packages of ground beef from Shaw's supermarkets in Maine.  They each sued Fairbank in federal court in Maine, seeking compensation for their

medical expenses and other damages.  Fairbank then filed third-party complaints against GOPAC in each suit, alleging that GOPAC had supplied Fairbank with the tainted meat that ended up in the packages Long and Smith had purchased.  Fairbank sought indemnification from GOPAC, under common law and contractual theories, in the event Fairbank was found liable to the individual plaintiffs.[1]

Fairbank later settled Long's and Smith's claims for $100,000 and $400,000, respectively.  Long and Smith both dismissed their complaints in March 2011, leaving only the third-party complaints by Fairbank against GOPAC.  The district court consolidated those complaints into one case in August 2011, and the parties proceeded to a jury trial.  The trial focused heavily on the "traceback" analyses that led Fairbank's experts to conclude that the contaminated meat could only have come from the GOPAC combos and not from another supplier's product.  Fairbank also introduced evidence relating to the discovery of an allegedly identical strain of E. coli in GOPAC-supplied meat in California and to signs of unusually high contamination levels at GOPAC's plant on the day it shipped the allegedly tainted meat to Fairbank. GOPAC moved for judgment as a matter of law at the close of Fairbank's case, and the district court denied the motion.

---

[1] Fairbank also asserted independent claims against GOPAC in the Long suit, but it voluntarily dismissed those claims before trial.

After hearing six days of testimony, the jury returned special interrogatories finding that GOPAC had delivered adulterated beef containing E. coli bacteria to Fairbank and that this same adulterated beef was later consumed by Long and Smith. The district court denied, without opinion, GOPAC's post-trial motions for relief from judgment, judgment as a matter of law, and a new trial.  This appeal followed.

## II.

GOPAC raises two challenges on appeal.  It first argues that it was entitled to judgment as a matter of law because the evidence was insufficient for a reasonable jury to conclude that GOPAC's meat was contaminated and that such meat was included in the packages Long and Smith purchased.  See Fed. R. Civ. P. 50(b).[2] GOPAC then argues that it is, at the least, entitled to a new trial, because the trial court erred in admitting the video deposition of GOPAC's former expert witness, Dr. Gerald Zirnstein. Neither argument succeeds.

We review de novo the denial of a motion for judgment as a matter of law following a jury verdict.  Cortés-Reyes v. Salas-Quintana, 608 F.3d 41, 47 (1st Cir. 2010).  In conducting this

---

[2] Fairbank contends that GOPAC failed to preserve at least part of this argument for appeal because GOPAC raised certain issues in its Rule 50(b) motion that were not included in its Rule 50(a) motion.  GOPAC insists that its Rule 50(a) motion covered the relevant theories.  For the purposes of this opinion, we will assume without deciding that GOPAC's entire argument was preserved, because the outcome would be the same in any event.

review, "[w]e must determine whether, 'viewing the evidence in the light most favorable to the verdict, a rational jury could have found in favor of the party that prevailed.'" Id. (quoting Bisbal-Ramos v. City of Mayagüez, 467 F.3d 16, 22 (1st Cir. 2006)). We will vacate the jury's verdict "[o]nly if the facts and inferences 'point so strongly and overwhelmingly in favor of the movant that a reasonable jury could not have [returned the verdict].'" Id. (second alteration in original) (quoting Acevedo-Diaz v. Aponte, 1 F.3d 62, 66 (1st Cir. 1993)).

In this case, there was ample evidence to support a rational jury's conclusion that GOPAC was the source of the E. coli contamination that sickened Long and Smith. Fairbank offered the testimony of multiple expert witnesses who had examined Fairbank's internal production records as well as U.S. Department of Agriculture records and concluded that (1) GOPAC's combos were the only common denominator in all of Fairbank's products implicated in the outbreak; and (2) GOPAC's meat was in the packages that Fairbank shipped to Shaw's supermarkets on the relevant date, which Long and Smith later purchased. Fairbank also offered the video deposition of Zirnstein, an expert hired by GOPAC, who admitted that GOPAC was a "probable" source of the tainted beef. Further, Fairbank introduced circumstantial evidence that the same strain of E. coli which sickened Long and Smith had appeared in GOPAC meat in California, and that the GOPAC facility that shipped the meat to

Fairbank had had other positive E. coli tests on the date of Fairbank's shipment.

The jury was free to credit this evidence and reasonably conclude that GOPAC supplied the adulterated meat and that Long and Smith ended up purchasing GOPAC's meat. To be sure, the evidence was hotly contested, with zealous advocacy on both sides. On appeal, GOPAC's primary line of attack on Fairbank's evidence is an argument that one of Fairbank's traceback reports (the "Hoffman report") was "destroyed" on cross-examination when a Fairbank witness admitted that the report had relied on an invoice that referred to a date outside the period when the contamination occurred. GOPAC argues that the discrediting of this report discredited all of Fairbank's traceback evidence and compelled a verdict in its favor. The argument overstates matters. Fairbank's other experts later testified to reaching the same results using invoices from the correct dates; the jury could have concluded that any mistake had been corrected. Further, the Hoffman report does not implicate Fairbank's other strong circumstantial evidence of causation at all.

At most, GOPAC has demonstrated that it cast doubt on Fairbank's traceback evidence. But when a party challenges a jury verdict, it is not our position to evaluate the credibility of

witnesses or the weight of the evidence.[3]  Attrezzi, LLC v. Maytag Corp., 436 F.3d 32, 37 (1st Cir. 2006) (citing Santiago-Negron v. Castro-Davila, 865 F.2d 431, 445 (1st Cir. 1989)).

GOPAC's second argument also fails.  As an initial matter, GOPAC did not object at trial to the introduction of the Zirnstein video, and so our review is only for plain error. Microfinancial, Inc. v. Premier Holidays Int'l, Inc., 385 F.3d 72, 80 (1st Cir. 2004).

GOPAC attempts to avoid this conclusion by arguing that the district court's denial of GOPAC's pretrial motion in limine to preclude use of the video constituted a definitive ruling that excused the requirement of making an objection at trial.  See Fed. R. Evid. 103(b); United States v. Mahone, 453 F.3d 68, 70 (1st Cir. 2006).  Not so.  First, the district court's ruling did not definitively determine that the video was admissible, but rather determined that there was an "open[] . . . door" to its potential admission "[s]o long as" Fairbank could establish that the video qualified as former testimony of an unavailable witness.  See Fed. R. Civ. P. 32(a)(4); Fed. R. Evid. 804(b)(1).  Further, the pretrial motion did not object to the video on the basis GOPAC now

_____

[3] The same principle applies to GOPAC's arguments regarding the interpretation of Fairbank's shipping records, the E. coli strain in California, and the size of the package of ground beef that Smith purchased.  The record reveals that both parties presented competing testimony on each of these points.  It is the jury's province to weigh contested evidence.

asserts, namely, that Zirnstein's testimony lacked a factual foundation. See United States v. Reed, 977 F.2d 14, 17 (1st Cir. 1992) (motion in limine asserting objection under Federal Rule of Evidence 403 could not have preserved objection to same evidence on Rule 404(b) grounds). Finally, GOPAC had sufficient time, opportunity, and incentive to object to the video's admission after it offered its evidence of the invoicing report date error.

To establish plain error, a party must show that there was error, that it was plain, and that it affected the party's substantial rights; an appellate court may then notice the error only if it "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." United States v. Borrero-Acevedo, 533 F.3d 11, 15 (1st Cir. 2008) (quoting Johnson v. United States, 520 U.S. 461, 467 (1997)) (internal quotation marks omitted). GOPAC's argument does not meet this exacting standard.

GOPAC argues that the court erred in admitting the video because Zirnstein had relied on the Hoffman report, and, once GOPAC had discredited the Hoffman report, Zirnstein's testimony lacked a foundation in accurate evidence. However, Zirnstein testified in his video deposition that he relied on many sources other than the Hoffman report, including information that Zirnstein thought Hoffman had failed to account for. A trial exhibit showed that Zirnstein had billed over 200 hours in preparing his own analysis. It is apparent that Zirnstein's testimony did not, as GOPAC seems

-9-

to suggest, merely parrot the conclusions of the Hoffman report. Under these circumstances, particularly where GOPAC did not bring the foundation issue to the court's attention by making a contemporaneous objection, the district court did not err -- let alone plainly err -- in admitting the video.

## III.

We find no error in the jury's verdict or in the district court's denial of GOPAC's post-trial motions.  The judgment is affirmed.