**Margarita Rivera DE FELICIANO, etc., et al., Plaintiffs, Appellees,**

v.

**Francisco DE JESUS, etc., et al., Defendants, Appellees.**

**Farm Credit Corporation, Defendant, Appellant.**

No. 88–1977.

United States Court of Appeals, First Circuit.

Heard March 1, 1989.

Decided April 27, 1989.

Rehearing and Rehearing En Banc Denied May 24, 1989.

**448**

Carlos Del Valle, Hato Rey, P.R., with whom Hector Rivera Cruz, Secretary of Justice, Bayamon, P.R., Rafael Ortiz Car-rion, Sol. Gen., Jaime Brugueras and Ramirez & Ramirez, Hato Rey, P.R., were on brief for defendant, appellant.

Ramon L. Walker Merino, San Juan, P.R., for plaintiffs, appellees.

Before BREYER and SELYA, Circuit Judges, and CAFFREY,* Senior District Judge.

BREYER, Circuit Judge.

The plaintiffs in this case worked for Puerto Rico's Farm Credit Corporation ("FCC") as "career" civil service employees. In 1985, Francisco de Jesus, the President of the FCC, dismissed them. They sued de Jesus and the FCC, claiming that their dismissals were unlawful, for two reasons: (a) de Jesus fired them because of their political affiliation (they are all members of the New Progressive Party); and, (b) he fired them without the hearing to which they were entitled under the Fourteenth Amendment's due process clause. A jury found against plaintiffs in respect to their claims against de Jesus, but in their favor in respect to their claims against the FCC. The district court entered a judgment awarding them damages, back pay, and reinstatement. The FCC appeals, arguing that: (a) the jury's "political discrimination" verdict against the FCC cannot stand in light of the jury's verdict in favor of de Jesus; and (b) the plaintiffs have no constitutionally protected property interest in their jobs, because the FCC hired them unlawfully in the first place. They add that (c) the FCC, as an integral part of the Commonwealth's government, enjoys Eleventh Amendment immunity from liability for damages. We agree with the FCC in respect to the first two claims, so we need not reach the third.

### I.

*Background*

The key facts include the following:
1. Between 1980 and 1984, the FCC hired all the plaintiffs.

---

* Of the District of Massachusetts, sitting by designation.

2. During 1982 the Commonwealth's Department of Agriculture began an audit of the FCC. In a 1982 report, the auditors said that FCC personnel decisions had been made improperly at the "management level," which fact had deprived the FCC's Personnel Director of control over hiring. The report added that, as a result, "several recruitments, appointments and changes were made which go astray from the provisions contained in the Personnel Regulation" of the FCC. The report then gave several examples of improper hiring procedures.

3. In January 1985, the Popular Democratic Party's candidate became governor and Francisco de Jesus, a PDP member, became President of the FCC.

4. In February 1985, de Jesus saw both the 1982 audit report and a 1985 supplemental report. He appointed a committee to "evaluate everything referring to personnel files" of the FCC's 37 career employees. (The FCC employed about 120 people, 3 in "trust" positions, 37 in "career" positions, and 80 in "unionized" positions.)

5. In late February 1985, the committee reported back. It said that the FCC had hired 30 of its 37 career employees in violation of various personnel regulations. It listed the employees' names and the relevant violations; the list included all six plaintiffs.

6. In May and June 1985 de Jesus sent letters to the six plaintiffs, dismissing them on the ground that the FCC had not legally hired them.

At trial, the plaintiffs presented evidence designed to show that, contrary to the committee's report, they had in fact taken examinations when applying for their jobs, and they had served probationary periods, as the personnel regulations required. They argued that, insofar as the FCC *did* violate its own personnel regulations when it hired them, the fault was that of the FCC's Personnel Director; it was not theirs. They added that de Jesus and the FCC, in any event, did not dismiss *everyone* who was hired illegally; instead, they dismissed only six persons, all of whom belonged to the NPP. de Jesus denied any

political motive. He said he had not known what political party the plaintiffs belonged to.

Ultimately, the jury found in de Jesus' favor on both the "political discrimination" and the "due process" claims. It found against the FCC on both claims. The FCC, before the court dismissed the jury, asked the court to "strike" the political discrimination verdict against it, in light of the verdict in de Jesus' favor. The district court decided that the verdicts for de Jesus but against the FCC were consistent. It decided that the evidence adequately supported the verdict against the FCC, and it denied the FCC's request. The FCC now appeals.

## II.

### *The Political Discrimination Claim*

■ The plaintiffs' political discrimination claim consists of their assertions that: (1) de Jesus, the President of the FCC, dismissed them because they belonged to the NPP; *and* (2) de Jesus, in doing so, was carrying out an official policy of the FCC. Both these assertions are legally necessary, for the Supreme Court has made clear that a government agency is liable for a deprivation of a constitutional right only where (1) a constitutional harm takes place, and (2) the "execution of a government's policy or custom ... inflicts" that harm. *See Monell v. New York City Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). In *Los Angeles v. Heller*, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986), for example, the Supreme Court said that the district court correctly dismissed plaintiffs' claims against a city, because it could not be held liable for an injury that its police officers inflicted, despite proof of an unconstitutional city policy, after a jury had exonerated the individual police officers (in the first phase of a bifurcated trial). The Court wrote that

neither *Monell* ... nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in

fact the jury has concluded that the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.

*Id.,* 475 U.S. at 799, 106 S.Ct. at 1573; *see also City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 921, 99 L.Ed.2d 107 (1988). The FCC now argues, citing *Heller,* that the jury's finding in favor of de Jesus destroys an essential element of plaintiffs' case against the FCC, because that verdict means that *no one* dismissed plaintiffs because of their political affiliation, so no constitutional deprivation took place.

The basic question before us is whether, as a matter of logic and evidence, the jury's two verdicts are inconsistent. How could the jury have found that the FCC fired plaintiffs for political reasons, while also finding in favor of de Jesus? Obviously, in some political discrimination cases, jury verdicts of this sort could prove consistent. There may well be a basis for an agency's liability other than the conduct of the individual defendants that the jury exonerated. Alternatively, a verdict in an employee's favor might reflect the jury's belief that the employee, while acting pursuant to the agency's unlawful policy, nonetheless acted in good faith. *See Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987) (discussing "qualified immunity" doctrine); *Figueroa–Rodriguez v. Aquino,* 863 F.2d 1037, 1043 & n. 7 (1st Cir.1988) (qualified immunity defense applies only to individual defendant, not to agency defendant). For example, in *Lincoln v. Board of Regents of University System,* 697 F.2d 928, 934–36 (11th Cir. 1983), the Eleventh Circuit reasoned that a judgment against a university Board of Regents was consistent with verdicts in favor of the two individual defendants, because the jury could have based the Board's liability on the acts of another university official who was not named as a defendant. *See also Batista v. Rodriguez,* 702 F.2d 393, 396–99 (2d Cir.1983) (jury

found city liable, but exonerated individual police officer defendants; the court considered reconciling the verdicts by assuming the jury thought the police acted unlawfully but in good faith, but rejected that possibility for lack of proof that the police officers acted pursuant to city policy).

We cannot similarly reconcile the jury's findings, however, in this case. The jury could not have exonerated de Jesus on the basis of qualified immunity, because that issue was decided by the court in plaintiffs' favor, and did not reach the jury. And, the conduct of FCC officials other than de Jesus cannot support a finding that the FCC discriminated in dismissing the plaintiffs. To establish an agency's liability, the plaintiffs must show that the discriminatory acts were done by persons with "final authority to establish [the agency's] policy with respect to the action ordered," *Pembaur v. Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986); *see also Praprotnik,* 108 S.Ct. at 926 ("authority to make ... policy is necessarily the authority to make *final* policy"). In this case, the *only* person plaintiffs claimed to have such authority was de Jesus. The record contains no evidence that any other FCC officials—such as the Personnel Director or the Committee appointed to report to de Jesus on the personnel files— had final policymaking authority. And, it is not within the jury's power to "define for itself which officials' decisions should expose [the FCC] to liability." *Praprotnik,* 108 S.Ct. at 928. Thus, the only legally adequate basis for the FCC's liability was eliminated by the jury's verdict in favor of de Jesus.

Plaintiffs argue that the verdicts can be reconciled by assuming that the jury found that de Jesus did discriminate, but it exonerated him because it believed that he acted in his "official" capacity, not in his "personal" capacity. The court's jury instructions, however, did not say that the jury could find only the FCC liable if de Jesus discriminated only in his "official" capacity. To the contrary, the district court told the jury

if you find that political affiliation was the motivating factor for dismissing plaintiffs from their career positions, and if you find that if it were not for plaintiffs' political affiliation they would not have been terminated from their jobs, then you *must* find that the *defendants* [the only two defendants were de Jesus and FCC] violated plaintiffs' First Amendment rights and are potentially liable for damages.

(emphasis added). The instructions go on to repeat that the key question is whether "political affiliation was the motivating factor." The court added that

If the claim of unconstitutional action by Mr. de Jesus, as president of the Farm Credit Corporation, is to bind the Farm Credit corporation, there must be proof that the acts of Mr. de Jesus were done pursuant to the policy of ... the agencies of which he was the chief executive. That is, that the alleged unconstitutional conduct was more than an isolated act on the part of the president of the corporation.

In other words, you must find that the alleged conduct was that of the president *and* the corporation he heads.

In deciding this issue, consider the position and executive power of the president of the corporation, his role within the corporation itself, in the context of this case and whether he acted in his official capacity.

(emphasis added). A fair reading of these (apparently correct) instructions, taken together, is that, if the jury believes de Jesus discriminated, it is to find him liable, and that if it finds him liable it *may* also find the FCC liable, but *only if* de Jesus acted pursuant to FCC policy. The only relevant reference in the jury instructions to "official capacity" is the quoted statement that the jury can take account of whether de Jesus acted in his "official capacity" when deciding whether he acted pursuant to "corporation policy." That statement is premised on the jury's having accepted the "claim of unconstitutional conduct by Mr. de Jesus." Nothing in the instructions even hints that the jury could find the FCC liable without finding de Jesus liable. We

must assume that juries follow instructions, *see Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 604, 105 S.Ct. 2847, 2858, 86 L.Ed.2d 467 (1985), and that they do not "consider and base their decisions on legal questions with respect to which they are not charged," *Heller*, 475 U.S. at 798, 106 S.Ct. at 1573. The jury's verdict for de Jesus must mean that the jury found that his actions, in whatever capacity, did not constitute political discrimination. We therefore conclude that the appellant is correct; the record cannot support a judgment for de Jesus and a judgment against the FCC, on plaintiffs' claim of political discrimination.

■ The question of remedy remains. Normally, when a jury returns inconsistent verdicts, the trial court, prior to accepting the verdicts, should ask the jury to reconsider. *See Fernandez v. Chardon*, 681 F.2d 42, 58 (1st Cir.1982) (proper remedy for inconsistent verdicts is to allow the jury a chance to reconcile the inconsistency); *see also* Fed.R.Civ.P. 49(b) (when answers to special interrogatories are inconsistent, the court "shall return the jury for further consideration ... or shall order a new trial"). In this case, however, the trial court, believing the verdicts consistent, did not do so. Instead, it accepted the verdicts and dismissed the jury. And now, we must either (a) order a new trial or (b) order judgment on the basis of the record in favor of the FCC. We believe the second alternative is the legally correct action for this court to take, for two reasons.

First, we cannot blame the district court's failure to send the jury back to reconsider any more on the defendants than on the plaintiffs. *Cf. Fernandez*, 681 F.2d at 58 (generally, the defendant must point out the inconsistency to the trial court before the jury is discharged, or else the issue is waived); *McIsaac v. Didriksen Fishing Corp.*, 809 F.2d 129, 134 (1st Cir. 1987). Here, the district court was fully aware of the potential inconsistency; indeed, it raised the issue itself, but then decided that the verdicts could be reconciled. The defense, not wishing to risk losing its favorable verdict for de Jesus,

simply argued that the court should strike the verdict against the FCC. The plaintiffs, wishing to preserve their favorable verdict against the FCC, simply argued that the court should accept that verdict. Neither side sought resubmission of the case to the jury; nor, for that matter, has either side raised in this court the possibility of a new trial. Under these circumstances, it seems procedurally fair to decide the case according to the ground rules that counsel have set: if the verdicts are consistent, the plaintiffs win; if they are inconsistent, the FCC wins.

Second, we have examined how other appellate courts have dealt with roughly analogous "inconsistency" problems, such as where a jury returns verdicts in favor of an employee defendant, but against an employer whose liability was derivative of the employee's liability, and where, for some reason, the trial court does not resubmit the case to the jury. Most of the decisions favor granting judgment notwithstanding the verdict to the employer defendant. *See Batista*, 702 F.2d at 399 (in a § 1983 case, district court should have granted jnov for defendant city, because the jury had exonerated the individual defendants); *United Steelworkers of America v. O'Neal*, 437 So.2d 101, 103 (Ala.1983) (verdict for employee "works an automatic acquittal" of employer, so employer is entitled to judgment); *Duke Trucking Co. v. Giles*, 366 S.E.2d 216, 219 (Ga.App.1988) (verdict for employee was a "legal verdict" but verdict against employer was "illegal and void," so trial court should have granted jnov for employer); *Young v. Cerniak*, 126 Ill.App. 3d 952, 81 Ill.Dec. 923, 932, 467 N.E.2d 1045, 1054 (1984) (in general, a verdict finding only the employer liable "must be reversed as legally inconsistent"); *Burnett v. Griffith*, 739 S.W.2d 712, 715 (Mo.1987) (en banc) (since "exoneration of an employee serves to exonerate the employer," court was required to give employer jnov; there was "no need for a new trial"); *Perry v. Costa*, 97 A.D.2d 655, 469 N.Y.S.2d 193, 194–95 (3d dept.1983) (since final judgment was entered in employee's favor, *res judicata* barred a new trial on employer's liability; judgment against employer reversed).

Other cases, however, hold that the employer is entitled only to a new trial; and some of these cases set aside the verdicts as to both the employer and the employee, and order a new trial as to both defendants. *See Barnes v. West Point Foundry*, 441 F.2d 532, 533 (5th Cir.1971) (ordering new trial as to employer because verdicts were inconsistent (employee defendant had been dismissed with prejudice)); *Estes v. Hancock County Bank*, 259 Ind. 542, 289 N.E.2d 728, 730 (1972) (generally, proper remedy is to "overcome the jury's anomalous verdict by granting a new trial"); *McInturff v. White*, 565 S.W.2d 478, 480 (Tenn.1976) (new trial ordered as to both defendants because "neither the verdict in favor of the employee nor the verdict against the employer can be permitted to stand").

Here, we would not order a new trial in respect to plaintiffs' claim against *de Jesus*, because plaintiffs have not appealed the judgment in de Jesus' favor. They have not asked for a new trial on their claim against him. Given the fact that the judgment in de Jesus' favor must stand, for us to order a new trial on plaintiffs' claim against the FCC would run counter to *Heller*, where the favorable verdict for the policeman barred trial on a claim against the municipality. We conclude that, because the jury's finding that de Jesus inflicted no constitutional harm has become final and binding upon the plaintiffs, we should follow the apparent weight of authority, and hold that the FCC is entitled to a judgment in its favor.

## III.

### *The Due Process Claim*

The jury found that the FCC, in failing to give the plaintiffs a hearing before dismissing them, deprived them of "property" without "due process of law," in violation of their Fourteenth Amendment rights. The FCC argues on appeal that the Fourteenth Amendment's guarantee does not apply to the plaintiffs, because the record shows that the plaintiffs did not possess any constitutionally protected

"property" interest in their jobs. The FCC concedes that, ordinarily, a career civil service employee has a federally protected "property" interest in his job. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (employees may have "a property interest in continued employment" created and defined by state law). But, the FCC adds, plaintiffs were dismissed because they had never received a legally proper appointment to a career position. No one took "property" from them; they simply never received a "property" right in the first place. The FCC relies on our recent decision in *Kauffman v. Puerto Rico Telephone Co.,* 841 F.2d 1169, 1173–74 (1st Cir.1988), as holding precisely in its favor.

In *Kauffman,* this court reviewed the dismissals of "career" employees whom the Telephone Company had initially hired without giving the general public notice of the job openings, without telling other eligible persons in the agency that they could apply for the jobs, and without honoring the agency's internal hiring preference. This court reviewed relevant Puerto Rico law on the question whether, in such circumstances, an employee has any sort of legal entitlement to his job. The court concluded that

> under Puerto Rico law any property right associated with a career position is rendered null and void if a violation of the Personnel Act attends the filling of such a position.

> .    .    .    .    .

> to the extent that the plaintiffs were hired in violation of [the agency's rules] they ... could not, upon termination, benefit from the "property" status of [career] positions.

*Id.,* 841 F.2d at 1173–74. The *Kauffman* court carefully distinguished *Loudermill,* in a discussion that we will not repeat here. *See Kauffman,* 841 F.2d at 1174–75. As far as we can tell, *Kauffman* is indistinguishable from the case before us.

The plaintiffs argue that *Kauffman* differs from this case in several relevant respects. First, they point out that *Kauff-*man involved summary judgment, not a jury verdict. They are right, but we do not see how that fact helps them. We have applied *Kauffman* unreservedly, in the setting of a full jury trial. *See Santiago–Negron v. Castro–Davila,* 865 F.2d 431, 436–37 (1st Cir.1989). And, the record here contains evidence, including the audit reports, the documents in plaintiffs' personnel files, and the Personnel Director's testimony, showing that the FCC hired plaintiffs without giving public notice of the job openings, without giving other FCC employees an opportunity to compete for the positions, and without creating a "registry" of eligible applicants. Plaintiffs introduced no contrary evidence. Article VII, §§ 2–5 of the FCC's Personnel Manual requires "public notice" of employment opportunities, "open competition" among applicants, and hiring from a "registry of eligibles." This is the same kind of hiring rule that was at issue in *Kauffman,* and the violations are also similar. Although the plaintiffs here do not concede that their appointments violated the personnel regulations, here, as in *Kauffman,* they have failed to rebut the defendants' evidence on this point.

Second, plaintiffs point out that their claim of *political discharge* was supported by substantial evidence, and went to the jury, while the *Kauffman* plaintiffs' political discharge claim did not reach the jury. Again, the plaintiffs are correct, but we do not see the importance of this distinction in applying the *Kauffman* decision to plaintiffs' *due process* claim. Indeed, in *Santiago–Negron,* we applied *Kauffman* in a similar situation. *See id.,* 865 F.2d at 436–37.

Third, plaintiffs point out that the jury found, in response to a question on the special verdict form, that they were "career" employees. The jury did so, however, only after the court instructed them that:

> a career employee, *or somebody who appears to be a career employee* cannot be fired without just cause as per the law and the regulations which apply in this

case. And in any event, some kind of hearing is mandatory

. . . . .

... the law of Puerto Rico and the regulations which apply to personnel *and to these plaintiffs* create such an interest, such a property interest as to career employees.

. . . . .

An individual who faces the deprivation of a property interest like the one the object of this suit must be given a hearing.

(emphasis added). These instructions may have suggested to the jury that, as a matter of law, they had to find that the plaintiffs were career employees. In any event, the record contains uncontradicted evidence that the plaintiffs were hired without the public notice and open competition that the relevant regulations required. *See* Article VII, §§ 2–5, Farm Credit Corp. Personnel Manual. That fact makes the appointments unlawful and void as a matter of Commonwealth law. *See Kauffman,* 841 F.2d at 1173; *Colon v. Mayor of Municipality of Ceiba,* 112 D.P.R. 740, 12 Puerto Rico Supreme Court Official Translations 934, 940 (1982). The jury could not lawfully find to the contrary.

Fourth, plaintiffs point out that the panel in *Kauffman* rested its decision in part upon the district court's having reached a similar legal conclusion. The *Kauffman* panel noted that this court should be "reluctant to interfere with a reasonable construction of state law made by a district judge, sitting in a state who is familiar with that state's law and practices." *Kauffman,* 841 F.2d at 1173 (quoting *Rose v. Nashua Board of Education,* 679 F.2d 279, 281 (1st Cir.1982)). The plaintiffs go on to point out that a district court judge, knowledgeable about Commonwealth law, reached a contrary legal conclusion in this case. In our view, however, the reasoning of the *Kauffman* opinion indicates that the panel would have reached the same result even if the district court had disagreed. Besides, here, another district court judge in Puerto Rico has reached the opposite conclusion in a case brought by other FCC

employees against the same defendants. *See Arbona Custodio v. De Jesus Gotay,* 678 F.Supp. 40, 43–45 (D.P.R.1988) (FCC employees appointed "without affording other employees .. any consideration for the positions available and without advertising the position openings" had "no right to due process prior to termination," because "an appointment to public employment effectuated contrary to the pertinent legal and regulatory disposition does not breed a property right in said position"), *aff'd mem.* 873 F.2d 409 (1st Cir. March 15, 1989).

Fifth, plaintiffs point out that *Kauffman* involved a violation of an "internal hiring preference" regulation, as well as regulations, like those at issue here, requiring public notice of vacancies and open competition. We do not see why this should make a difference. As in *Kauffman,* the basic purpose of the personnel regulations involved in this case is to encourage open competition and selection of the most qualified candidate from a pool of applicants, that is, to carry out the merit principle in civil service hiring. *See Kauffman,* 841 F.2d at 1174 (purpose of vacancy notices and internal hiring preference is to further the merit principle). Hence, the court reasoned in *Kauffman* that an appointment bypassing the regulations is an act "contrary to laws and regulations furthering the underlying values of the Personnel Act," *id.,* and is null and void. This reasoning applies with equal force to the case now before us.

Finally, plaintiffs argue that any failure to abide by the rules when they were hired was not their fault, but the fault of the FCC. That may well be so, but the legal question has nothing to do with fault. It has to do with whether or not Puerto Rico law gave the plaintiffs a sufficient "property" interest in their jobs as to invoke the protection of the Fourteenth Amendment. We can find no significant difference between *Kauffman* and this case. That being so, we must reach the same conclusion. Plaintiffs did not show a sufficient "property" interest in their jobs; hence, their jobs did not fall within the scope of the Four-

teenth Amendment's protection of "property" rights. *See Kauffman*, 841 F.2d at 1173–75. Thus, the FCC did not violate their due process rights when it failed to give them a hearing.

For these reasons, the judgment of the district court is *Reversed.*

## MEMORANDUM AND ORDER

Since counsel for appellees states in his petition for rehearing that the "inconsistency issue has taken us by total surprise," we wish to point out the following:

1. Appellants, in making their second argument in their initial brief, wrote:

Farm Credit liability in this case is exclusively predicated on the conduct of defendant de Jesus, whom the jury exonerated for that very same conduct.... Hence, since de Jesus' conduct was not constitutionally tortious, as determined by the jury, it cannot constitute an unconstitutional policy.... Therefore, in light of the verdict exonerating de Jesus, and the specific jury charge on Farm Credit's liability, the court's decision imposing liability on Farm Credit is contrary to well-established constitutional doctrines....

2. Appellees may believe that it is not appropriate to characterize the legal problem this argument raises as one of "verdict inconsistency." Yet, we believe that is the proper legal characterization; it is a characterization that seemed to work in appellees' favor, not against them (or, was, at least, neutral); and a member of the panel specifically raised the matter at oral argument.

3. For the reasons mentioned in the opinion, though we found that appellant did not want the matter resubmitted to the jury, that fact, in the circumstances, did not constitute a "waiver" preventing appellant from making its second argument on appeal, nor did it make it unfair, or otherwise inappropriate for us to consider that argument.

While we recognize that the case, on appeal, presented close and difficult issues, we considered the arguments raised and discussed them in our opinion. We can find no significant new argument, not previously considered, in the petition for rehearing.

The petition for rehearing is, therefore, *Denied.*