Emma Rosa MORALES–TORRES, et al., Plaintiffs,

v.

Victor SANTIAGO DIAZ, et al., Defendants.

No. CIV.02–1889 JAF.

United States District Court, D. Puerto Rico.

Sept. 30, 2004.

Francisco R. Gonzalez–Colon, F.R. Gonzalez Law Office, San Juan, PR, for Plaintiffs.

Juan M. Rivera–Gonzalez, Ruben A. Rivera–Rosa, Lespier, Muñoz, Noya & Rivera, Kenneth Colon–Alicea, Michael C. McCall, San Juan, PR, for Defendants.

### OPINION AND ORDER

FUSTE, Chief Judge.

Plaintiffs Emma Rosa Morales–Torres, Erasmo Santiago–Ramos, Víctor Manuel Mejías–Vega, Eduardo Soto–Santiago, Ivonne Soto–Pereles, Raúl M. Ortiz–Rivera, Julio Angel Ojeda–Acevedo, Bárbara J. Ojeda–Acevedo, Leticia Santo Domingo–Torres, José A. López–Flores, José L. González–Rodríguez, María López Correa, Eugenio Hernández–de–Jesús, and Ramona González–García ("Plaintiffs"), bring the present action against Defendants Municipality of Toa Baja; the Mayor of Defendant Municipality, Víctor Santiago–Díaz; and the Human Resources Director of Defendant Municipality, Milagros Delgado, alleging violations of the First and Fourteenth Amendments of the United States Constitution, U.S. Const. amend. I, V, & XIV; 42 U.S.C. § 1983 (1994 & Supp. 2003); and various state laws. *Docket Document No. 1.* Plaintiffs seek declaratory, injunctive, and monetary relief. *Id.*

Defendants move for summary judgment. *Docket Document Nos. 45, 63.* Plaintiffs oppose the motion. *Docket Document No. 72.*

### I.

### *Factual and Procedural Synopsis*

Unless otherwise indicated, we derive the following factual summary from the parties' statements of uncontested facts. *Docket Document Nos. 45, 63, 47.*

Defendant Víctor J. Santiago–Díaz ("Defendant Santiago") is the Mayor of the Municipality of Toa Baja ("Defendant Municipality"). On November 7, 2000, general elections were held in Puerto Rico. Defendant Santiago ran on the ballot as the mayoral candidate of the Popular Democratic Party ("PDP"), unseating incumbent Mayor Víctor Soto Hernández ("Mr. Soto"), who ran for the New Progressive Party ("NPP"). Mr. Soto had been the Mayor of Defendant Municipality for sixteen years.

Milagros Delgado ("Defendant Delgado") is the former Human Resources Director of Defendant Municipality.

Upon taking office in January 2001, Defendant Santiago and Delgado found that former Mayor Soto had appointed hundreds of persons to regular career positions, in violation of the applicable law. The Comptroller for the Commonwealth of Puerto Rico ("Comptroller") had issued various audit reports regarding the appointment of municipal personnel. The Comptroller's June 14, 2000, report concluded that former Mayor Soto had illegally appointed employees and had improperly raised the compensation of many of them, despite Defendant Municipality's precarious financial condition. The Comptroller found, inter alia, that: (1) from February 1985 to October 1987, Mayor Soto appointed twenty-two family members, and eleven family members of Municipal Legislators as employees; (2) thirty-three of these appointed employees lacked the background and minimum requirements for the position to which they were appointed; and (3) some of the employees received salaries in excess of the maximum compensation set in Defendant Municipality's Uniform Class and Retribution Plan. *Docket Document No. 47.*

In an attempt to remedy the situation, Defendant Santiago contacted several local government agencies, including Puerto Rico's Office of Labor Counseling and Administration of Human Resources ("OCALARH"). In a letter to OCALARH, Defendant Santiago inquired about the validity of three of Defendant Municipality's employee Classification and Compensation Plans. In a February 8, 2001, letter, Angel T. Aguiar Leguilou, the Acting Administrator of OCALARH, confirmed that only a 1991 Plan had been submitted for OCALARH approval, as required by law. However, 1993 and 1997 plans had not been submitted for approval. On May 29, 2001, in response to Defendant Santiago's additional inquiries, OCALARH clarified that any employee classifications taken pursuant to the 1993 and 1997 plans were unauthorized and, therefore, null and void.

### A. *Plaintiff Emma Morales–Torres*

Plaintiff Emma Morales–Torres ("Plaintiff Morales–Torres") has been married to former Mayor Soto's son since 1983. On August 5, 1985, Plaintiff commenced her employment with Defendant Municipality in a temporary Office Clerk position. On October 1, 1985, Plaintiff became a career employee with a regular status position as Office Clerk I. On July 1, 1993, Plaintiff was reclassified as an Executive Officer I. Plaintiff did not interview for the Executive Officer I position, and does not recall having been advised of the position's requirements. Her job duties remained the same after the reclassification.

On May 21, 2001, Plaintiff Morales–Torres attended a meeting with Defendant Santiago, Defendant Delgado, and other municipal employees. Defendant Santiago stated that he had to take specific actions regarding their employment, as specified in letters the employees received, because of irregularities pointed out by the Comptroller of Puerto Rico. The letters advised Plaintiffs of their right to an informal administrative hearing prior to implementation of the intended personnel action, and a right to appeal the informal hearing decision at the Personnel Administration Systems Appeal Board ("JASAP"). Plaintiff Morales–Torres chose not to request the hearing or to appeal.

### B. *Plaintiff Erasmo Santiago–Ramos*

Plaintiff Santiago–Ramos (Plaintiff Santiago–Ramos) is a member of the NPP who actively participates in NPP political

campaigns. Plaintiff Santiago–Ramos started to work for Defendant Municipality in 1986. He is cousin to then-Mayor, Mr. Soto. Plaintiff Santiago–Ramos occupied the position of Construction Inspector for seven years. Plaintiff does not recall having seen any performance appraisal during the seven years he held the transitory position. In 1991, Plaintiff Santiago–Ramos was appointed to a transitory Construction Supervisor position. In 1993, Plaintiff Santiago–Ramos was appointed to a career position as Executive Director I.

By letter dated May 21, 2001, Plaintiff Santiago–Ramos was advised of the fact that Defendant Santiago intended to declare his appointment to the Executive Director I position null and void. He was further told that he would be reclassified to the last career position he held, but in a transitory capacity, and that he would have to submit evidence of his academic preparation for that position. He was advised that this intended action was part of the corrective action plan to be implemented by Defendant Municipality. Plaintiff Santiago–Ramos spoke to Defendants Santiago and Delgado for the first time when he was handed the letter of intent. Plaintiff was advised of his right to request an informal administrative hearing prior to being reinstated in the Construction Supervision position. Plaintiff did not request a hearing. Neither did he submit documentation concerning his educational background. In a letter dated June 22, 2001, Defendant Santiago advised Plaintiff that, effective July 1, 2001, Plaintiff was reclassified to the position of Construction Supervisor.

### C. *Plaintiff Eduardo Soto–Santiago*

Plaintiff Eduardo Soto–Santiago ("Plaintiff Soto–Santiago") is former Mayor Soto's brother. Plaintiff is an NPP member, and actively participates in NPP campaigns. In 1985, he was hired as a Parks and Communal Centers Supervisor. On August 1, 1985, Plaintiff was appointed to the position of Sub–Director of the Landscaping Bureau and consequently received a salary increase. After taking a leave of absence for part of 1997 and early 1998, Plaintiff returned to work for Defendant Municipality. In February 1989, Plaintiff was appointed Executive Director I. In November 1991 and October 1995, Plaintiff Soto–Santiago's salary was increased. On August 1, 1997, he was appointed to the position of Executive Director IV, with a concomitant salary increase. Plaintiff Soto–Santiago's duties did not change.

On May 16, 2001, Plaintiff was informed that his appointments to the Executive Director I and IV positions were illegal, the former because it violated the merit principle, and the latter because it was made pursuant to the 1997 Classification and Retribution Plan, and that he had a right to a hearing on the proposed reclassification. On June 22, 2001, Plaintiff Soto–Santiago's appointments were declared null and void, and he was demoted to a position as Workers Foreman, with a reduction in salary.

### D. *Plaintiff Raúl Ortiz–Rivera*

Plaintiff Raúl Ortiz–Rivera ("Plaintiff Ortiz–Rivera") is an NPP member who participated in the NPP's political campaigns. Plaintiff Ortiz–Rivera graduated from high school in 1986, and commenced working for Defendant Municipality on April 1, 1987, as an Office Clerk with a transitory status. In 1988, Plaintiff Ortiz–Rivera's father was an elected Assemblyman of the Municipality of Toa Baja, a position he held until 2000. In 1993, Plaintiff was appointed to an Office Clerk III position, an appointment he did not request. In March 2001, Plaintiff Ortiz–Rivera met with Defendant Santiago and oth-

er employees, where he was given a letter of intent informing him that, according to the Comptroller of Puerto Rico, his December 1, 1991, appointment to Office Clerk III violated the merit principle, and that from January 1, 1996, to January 31, 1998, he had been paid illegal salaries. On June 22, 2001, Plaintiff Ortiz–Rivera was advised that he would be appointed to a position of Office Clerk I, effective July 1, 2001. He was told that he could request an informal hearing, and that he could appeal the informal hearing decision before the JASAP. Plaintiff did not file an appeal.

### E. *Plaintiff Julio Angel Ojeda–Acevedo*

Plaintiff Julio Angel Ojeda–Acevedo ("Plaintiff Ojeda–Acevedo") is an NPP member who participates in NPP political campaigns. Plaintiff started working with Defendant Municipality in 1995, and occupied this transitory position until 1997. At the time of his initial appointment, Plaintiff Ojeda–Acevedo's mother was President of Defendant Municipality's Legislature. In 1997, Plaintiff Ojeda–Acevedo was given a new appointment to the career position of Facilitator of Recreational Services, and in 1999, Plaintiff was appointed to the career position of Community Groups Organizer. Plaintiff does not recall having filed an application or being interviewed for said positions. Plaintiff's job duties did not change with each appointment.

In a letter of intent dated May 16, 2001, Plaintiff Acevedo was advised by Defendant Santiago that his career appointments as Recreational Leader, Recreational Facilitator, and Community Groups Organizer were null and void, based on the Comptroller's conclusion that he had been illegally appointed to said positions. The letter of intent stated that Plaintiff had the right to request an informal administrative hearing, which he

decided not to request. In July 2001, Plaintiff Ojeda–Acevedo was transferred to Recreational Services. Plaintiff resigned from his position with Defendant Municipality on November 30, 2001.

### F. *Plaintiff José López–Flores*

Plaintiff José López–Flores ("Plaintiff López–Flores") is an NPP member and participates in NPP political campaigns. He completed high school in 1969–1970, and started to work with Defendant Municipality in 1977 as a Community Groups Supervisor. From 1980 to 1989, Plaintiff López–Flores alternatively held the positions of Administrative Assistant, Truck Driver, Landscaping Director, Public Roads Supervisor, Maintenance Director, and Supervisor of the Service Department. On July 1, 1989, Plaintiff was appointed to the career position of Executive Director I, which included a salary raise. Plaintiff does not recall if he submitted an application for the position, or whether he went through a probationary period. Plaintiff was subsequently appointed to the career position of Executive Director II.

On May 21, 2001, Plaintiff was given written notice that his position was being reclassified, and that he had a right to an informal hearing, which he did not request. Plaintiff was demoted to the position of Conservation Supervisor.

### G. *Plaintiff Ivonne Soto–Pereles*

Plaintiff Ivonne Soto–Pereles ("Plaintiff Soto–Pereles") is an NPP member who participates in NPP political campaigns. She has been married to former Mayor Soto's brother, José Soto–Santiago, since 1972. Plaintiff Soto–Pereles obtained her high-school diploma in 1968, and started to work with Defendant Municipality on October 1, 1979, taking dictation on a temporary basis. As of that date, Plaintiff had a secretarial degree. On July 1, 1981, Plain-

tiff Soto–Pereles was reclassified to a career position as a Secretary III. On August 1, 1994, Plaintiff was reclassified from Secretary III to Executive Secretary. On September 1, 1996, Plaintiff was reclassified as an Executive Director I, a position for which Plaintiff never applied. The Executive Director position requires a bachelor's degree. Plaintiff did not apply for these positions.

On May 16, 2001, Plaintiff was advised that Defendant Municipality intended to declare her appointment to Executive Director I null and void, that she would be reinstated to a Secretary III position, and that she had a right to an informal administrative hearing and an appeal with the JASAP. Plaintiff Soto–Pereles chose not to ask for an informal hearing. On June 22, 2001, Plaintiff was advised that her position was null and void.

### H. *Plaintiff Víctor Manuel Mejías–Vega*

Plaintiff Víctor Manuel Mejías–Vega ("Plaintiff Mejías–Vega") is an NPP member and actively participates in NPP political campaigns. Plaintiff obtained his high-school diploma in 1982, and has civil engineering credits from the Polytechnical University of Puerto Rico. He has not completed a bachelor's degree. Plaintiff Mejías–Vega was initially employed as Auxiliary Director. On July 1, 1991, Plaintiff became a career employee with a regular status, and received an accompanying salary raise. The job description of Auxiliary Director requires a bachelor's degree.

On January 19, 1993, Plaintiff Mejías–Vega was transferred to the Planning Department. On April 16, 1993, he was reclassified as Executive Director I, a position Plaintiff neither requested nor applied for. On August 1, 1997, the Municipal Assembly appointed Plaintiff to the trust position of Director of Emergency Control on former Mayor Soto's recommendation. On December 31, 2000, Plaintiff Mejías–Vega quit the position as Director of Emergency Control, and on January 10, 2001, he was appointed Executive Director I on a temporary basis.

On May 22, 2001, Plaintiff was advised that Defendant Santiago intended to declare his appointments null and void, that this was part of Defendant Municipality's corrective action plan based on the Comptroller's audit report, and that he would be reclassified to the Executive Officer position. The letter informed Plaintiff that he had the right to present evidence that showed he was qualified for the positions to which he had been appointed. The letter also informed Plaintiff that he had a right to an informal hearing and an appeal with JASAP. On July 1, 2001, Plaintiff was reclassified to the position of Executive Officer I.

### I. *Plaintiff Eugenio Hernández–de–Jesús*

Plaintiff Eugenio Hernández–de–Jesús ("Plaintiff Hernández–de–Jesús") is an NPP member and participates in NPP political campaigns. He obtained his high-school diploma during the early 1980s. He did not finish college, although his resume indicated he had completed both an associate and bachelor's degree. On June 3, 1985, Plaintiff started to work with Defendant Municipality as a probationary career employee in the Division of Planning. On March 1, 1989, Plaintiff Hernández–de–Jesús was reclassified as Operator of Data Processing III. On July 1, 1989, Plaintiff was reclassified as an Electronic Systems Programmer. On November 1, 1991, Plaintiff was reclassified as an Executive Director I.

On June 21, 2001, Plaintiff Hernández–de–Jesús received a letter informing him of Defendant Municipality's proposed cor-

rective action plan. Plaintiff was informed of his rights to continue as Executive Director I if he came forward with evidence of his bachelor's degree. On October 4, 2001, Plaintiff appeared at an informal hearing regarding his qualifications for the Executive Director I position, but did not submit any evidence regarding his educational background or the completion of a bachelor's degree. Plaintiff was reclassified to the regular career position of Operator of Data Processing.

## J. *Plaintiff Bárbara Ojeda–Acevedo*

Plaintiff Bárbara Ojeda–Acevedo ("Plaintiff Bárbara Ojeda") is a member of the NPP and participates in NPP political campaigns. She obtained her high-school diploma sometime in 1991 or 1992, after passing the general equivalency high-school exam administered by the Department of Education.

Plaintiff Bárbara Ojeda was hired to work as Office Clerk I on a temporary basis. Plaintiff's appointment was renewed on a monthly basis and/or for six-month terms. On August 16, 1997, Plaintiff was appointed to the career position of Office Clerk I. Plaintiff does not recall a job posting for said position.

On May 16, 2001, Plaintiff Bárbara Ojeda was advised of the fact that her appointment to Office Clerk I was null and void, but that she had the right to an informal administrative hearing. On June 22, 2001, Defendant Santiago informed Plaintiff that her appointment was null, since she never filed a request for an administrative hearing, and further informed Plaintiff Bárbara Ojeda that she had a right to file an appeal before the JASAP. Plaintiff was re-classified to a messenger chauffeur position, and is still working in that position.

## K. *Plaintiff Lydia Rodríguez–Fuentes*

Plaintiff Lydia Rodríguez–Fuentes ("Plaintiff Rodríguez–Fuentes") completed high school and a nine-month course in secretarial science studies, as well as a semester of secretarial science at a local university. Plaintiff Rodríguez–Fuentes started to work for Defendant Municipality in 1984 as Secretary I, and in 1984 and 1985 was promoted to the positions of Secretary II and Secretary III, respectively. On February 1, 1995, Plaintiff was reclassified as Executive Officer II, with a salary increase. She does not recall seeing a job announcement or interviewing for that position.

On September 19, 2001, Plaintiff Rodríguez–Fuentes was notified that Defendant Santiago intended to declare her appointment null and void, and that she was to be reclassified to her Secretary III position as part of Defendant Municipality's corrective action plan. Defendant Santiago's letter advised Plaintiff of her right to request an informal administrative hearing prior to the intended personnel action's implementation, which Plaintiff requested. On February 19, 2002, Defendant Santiago notified Plaintiff Rodríguez–Fuentes that the proposed personnel transaction to nullify her appointment was being implemented, and that she was being reclassified as Secretary III.

## L. *Plaintiff Ramona González–García*

Plaintiff Ramona González–García ("Plaintiff González–García") is an NPP member who participated in NPP political campaigns. She was initially employed with Defendant Municipality as Office Clerk I, a transitory position. The appointment was renewed on a continued basis through September 1997. On July 1, 1998, Plaintiff was promoted to a career position as Office Clerk I and, in July 6, 1998, to a regular career appointment as

Office Clerk I. On February 5, 2002, Plaintiff González–García was notified that Defendant Santiago intended to nullify her career appointment as Office Clerk I, and to return her to the Office Clerk I transitory position she held before her appointment to her career position. The letter advised her of her right to request an informal administrative hearing prior to her reclassification's implementation, of which Plaintiff availed herself. Plaintiff has not been reclassified, and Plaintiff continues to hold her career status appointment as an Office Clerk I.

## M. *Plaintiff José Luis González–Rodríguez*

Plaintiff José Luis González–Rodríguez ("Plaintiff González–Rodríguez") is an NPP member who participated in NPP campaigns. Plaintiff completed the eleventh grade, and started to work for Defendant Municipality on October 16, 1995, in a temporary position as a "worker." His appointments were renewed for three- to six-month terms until September 2000. On September 1, 2000, Plaintiff was appointed to the career position of worker, contingent on a three-month probationary period. However, on September 5, 2000, Plaintiff was appointed to the career position of worker.

On March 16, 2002, Plaintiff was advised that his appointment to a career position was null and void. He was also advised that he would be reclassified to the same position on a temporary status, and that he had the right to an informal administrative hearing. Plaintiff González–Rodríguez requested an administrative hearing, and the ruling is still pending.

On June 11, 2002, Plaintiffs filed the present complaint. *Docket Document No. 1.* On January 9, 2003, Plaintiffs tendered an amended complaint. *Docket Document No. 10.* Plaintiffs claim that Defendants'

actions violated the First, Fifth, and Fourteenth Amendments of the United States Constitution, 42 U.S.C. § 1983, and state laws. *Docket Document No. 10.* Plaintiffs request injunctive and monetary relief. *Id.*

On December 22, 2003, Defendants moved for summary judgment in their official and personal capacities. *Docket Document Nos. 45, 47.* Plaintiffs opposed the motion on June 4, 2004. *Docket Document No. 72.*

## II.

### *Summary Judgment Motion Standard*

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. *Calero–Cerezo v. U.S. Dep't of Justice,* 355 F.3d 6, 19 (1st Cir.2004).

The moving party carries the burden of establishing that there is no genuine issue as to any material fact; however the burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. *See id.* at 331, 106 S.Ct. 2548.

The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment exists "to pierce the boilerplate of the pleadings and assess the proof in order to determine the need for trial." *Euromodas, Inc. v. Zanella*, 368 F.3d 11, 17 (1st Cir.2004) (citing *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992)).

## III.

### Analysis

Defendants Municipality, Santiago–Díaz, and Delgado, in their official capacities, moved for summary judgment, averring that we should dismiss the complaint on the grounds that Plaintiffs have failed to state either a due process or first amendment claim. *Docket Document No. 45, 63.* Moreover, in a separate summary judgment motion, Defendants Santiago–Díaz and Delgado, in their personal capacities, claim that they are shielded from liability by qualified immunity. *Docket Document No. 47.* Plaintiffs have submitted an opposition. *Docket Document No. 72.*[1]

### A. Due Process

Defendants claim that Plaintiffs' positions were found to be null and void, and, as such, they held no property right to those positions. *Docket Document No. 45.* Defendants contend that Plaintiffs have not met the requirements for a due process claim without a legally-cognizable property right. *Id.*

■ The due process clause of the Fourteenth Amendment provides that no state shall deprive a person of life, liberty, or property without constitutionally adequate procedures. *See Cotnoir v. Univ. of Me. Sys.*, 35 F.3d 6, 10 (1st Cir.1994) (internal citation omitted). "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understanding that stem form an independent source such as state law." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49 (1st Cir. 1990). As stated previously, in Puerto Rico, "career" employees have a property interest in continued employment and can only be fired for good cause. *Zayas Rodriguez v. Hernández*, 748 F.Supp. 47, 55 (D.P.R.1990) (citing *Kauffman v. P.R. Tel. Co.*, 841 F.2d 1169, (1st Cir.1989)).

■ To state an actionable procedural due process claim under Section 1983, Plaintiffs must: (1) allege facts that show that they have a property interest, as defined by state law, and (2) show that the conduct complained of has deprived them of that property interest without constitutionally adequate procedures. *PFZ Props. v. Rodríguez*, 928 F.2d 28, 30 (1st Cir. 1991).

"The sufficiency of a claim of entitlement to a property interest in public employment must be measured by, and decided with reference to, local law." *Rosario–Torres v. Hernandez–Colón*, 889 F.2d 314, 319 (1st Cir.1989). "[U]nder Puerto Rico law, any property right associated with a career position is rendered null and void if a violation of the Personnel Act attends the filling of such a position." *Id.; Kauff-*

---

1. Defendants alleged that Plaintiffs' opposition motion failed to attach a statement of uncontested facts which is compliant with the requirements of this court's local rules. *Docket Document No. 79.* Plaintiffs have since then submitted their statement of uncontested facts. *Docket Document No. 93.*

*man,* 841 F.2d at 1173; *accord de Feliciano v. de Jesus,* 873 F.2d 447, 452–55 (1st Cir.1989); *Santiago–Negrón v. Castro–Davila,* 865 F.2d 431, 435–37 (1st Cir.1989). Thus, "to the extent that the plaintiffs were hired in violation of [agency rules], they . . . could not, upon termination, benefit from the 'property' status of [their 'career'] positions." *Kauffman v. Puerto Rico Telephone Co.,* 841 F.2d 1169, 1174 (1st Cir.1988). "The legal question of a plaintiff's entitlement to a constitutionally-protected property interest in employment 'has nothing to do with [a defendant's] fault.'" *Rosario–Torres,* 889 F.2d at 319 (quoting *de Feliciano,* 873 F.2d at 454). "If a plaintiff's engagement was null and void, then defendant's misdeeds cannot transmogrify it into something more meaningful. Two wrongs, after all, do not make a right." *Id.*

Here, Defendants claim that Plaintiffs' appointments were null and void, claiming, inter alia, that these were made pursuant to an invalid employment plan and, in some cases, granted Plaintiffs compensation they were not due. *Docket Document Nos. 45, 63.* Plaintiffs counter that Defendants' proffered rationale is suspect, alleging that the dismissal plan was valid. *Docket Document No. 72.*

■ In the end, the legality of Plaintiffs' appointments is not central to the disposition of Plaintiffs' due process claim. As Defendants observe, a due process violation also requires that Plaintiffs be deprived of meaningful pre-deprivation process. *Kercado–Meléndez v. Aponte–Roque,* 829 F.2d 255, 263 (1st Cir.1987) (holding that persons with a property interest in employment are due "notice and a meaningful opportunity to respond" prior to termination). In procedural due process cases, "[t]he constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process."

In *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court held that the adequacy of the due process provided by the state is assessed by means of a balancing test that weighs the government's interest against the private interest affected, the risk of an erroneous deprivation, and the value of additional safeguards. After performing the *Mathews* balancing test, the Supreme Court held that a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The First Circuit has additionally found that the notice requirement includes notice of the proposed action based on those charges. *Cotnoir,* 35 F.3d at 11. Any hearing need not be the equivalent of a judicial hearing; it serves as an "initial check against mistaken decisions—essentially a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Cleveland Bd. of Educ.,* 470 U.S. at 545–46, 105 S.Ct. 1487.

■ Here, Plaintiffs concede they received letters informing them of Defendant Santiago's intention to implement personnel transactions that could affect their employment. *Docket Document No. 47.* These letters informed them that they had a right to an informal hearing, as well as a right of appeal to JASAP, a state employment appeal board. *Id.* Plaintiffs have failed to allege, let alone argue, that they did not receive the requisite process, or that the process received nonetheless deprived them of their constitutional due process rights. *Docket Document No. 72.*

In fact, Plaintiffs have submitted evidence of their own which substantiates that they had notice and opportunity to present their claims, including the letters sent by Defendant Municipality, and their requests for informal hearings. *See, e.g., Docket Document No. 93, Exhs. 2, 3, 6, 9.* As such, even if we were to find that Plaintiffs held a property right over their employment, Defendants have persuasively argued that Plaintiffs' received the requisite procedural due process. Plaintiffs' due process claims are necessarily dismissed.

### B. *First Amendment Claims*

Defendants also challenge Plaintiffs' First Amendment claims. *Docket Document Nos 45, 63.*

■ The First Amendment protects non-policymaking public employees from adverse employment actions based on their non-conforming political opinions. *See Padilla–Garcia v. Guillermo Rodriguez,* 212 F.3d 69, 74 (1st Cir.2000); *see also Rutan v. Republican Party of Illinois,* 497 U.S. 62, 75–76, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990).

We employ a two-part, burden-shifting analysis to evaluate claims of political discrimination. *See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Padilla–Garcia,* 212 F.3d at 74. To establish a prima facie case of political discrimination, a plaintiff must show that party affiliation was a substantial or motivating factor behind a challenged employment action. *Padilla–Garcia,* 212 F.3d at 74. It is well established that an employment dismissal in violation of First Amendment rights constitutes an adverse employment action. *Rutan,* 497 U.S. at 68–70, 110 S.Ct. 2729. The First Amendment also protects against adverse employment decisions, which may include not only termination, but also failures to reappoint or

rehire, demotions, transfers, and reassignments. *Benningfield v. City of Houston,* 157 F.3d 369, 376 (5th Cir.1998).

The burden then shifts to the defendant, who must establish, by a preponderance of the evidence, that he would have taken the same action regardless of the plaintiff's political beliefs. *Id.* Nonetheless, "[t]he evidence by which the plaintiff established her prima facie case may suffice for a factfinder to infer that the defendant's reason is pretextual and to effectively check summary judgment." *Id.* (internal citations omitted). However,

> [p]roof of an improper motive is not sufficient to establish a constitutional violation—there must also be evidence of causation. Accordingly, when a public employee shows that protected [conduct] was a "motivating factor" in an adverse employment decision, the employer still prevails by showing that it would have reached the same decision in the absence of the protected conduct.

*Crawford–El v. Britton,* 523 U.S. 574, 593, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). "[E]ven if a plaintiff meets his or her initial burden of showing that political affiliation was a motivating factor for an employment decision, that is insufficient to establish discrimination as a matter of law because the plaintiff's case at that point does not 'distinguish[ ] between a result caused by a constitutional violation and one not so caused.'" *Sánchez–López v. Fuentes–Pujols,* 375 F.3d 121, 131 (1st Cir. 2004) (citing *Mt. Healthy,* 429 U.S. at 286, 97 S.Ct. 568). The First Circuit has noted that adopting "a view of causation that focuses solely on whether protected conduct played a part in an employment decision ... would put an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied [otherwise]." *Id.* (internal citations omitted). Put differently,

while a plaintiff may be able to prove that political affiliation was a motivating reason for his termination, the employer "may still defeat liability by liability that plaintiffs' positions were obtained in violation of Puerto Rico law and that, even if political animus was a factor, defendants would have taken corrective action anyway against every employee whose position was obtained in violation of law." *Id.*

Here, Plaintiffs Ojeda–Acevedo, Ortiz–Rivera, Soto–Santiago, Soto–Pereles, López–Flores, González–Rodríguez, López–Correa, and Hernández–de–Jesús, while stating they are known NPP members, do not proffer evidence of any specific discriminatory conduct.[2] "[S]tatements of political affiliation unaccompanied by any specific factual information to support a claim and unrelated to any employment action taken by defendant against plaintiff" is patently insufficient to establish an act of political discrimination." *López–Carrasquillo v. Rubianes*, 230 F.3d 409, 414 (1st Cir.2000). Plaintiffs must instead make a fact-specific showing that a causal connection exists between the adverse treatment and their political affiliation. *Aviles–Martínez v. Monroig*, 963 F.2d 2, 5 (1st Cir.1992); *Correa–Martínez*, 903 F.2d at 58. Since the above-named Plaintiffs have failed to make this causal connection in their proffer, Plaintiffs Ojeda–Acevedo,

Ortiz–Rivera, Soto–Santiago, Soto–Pereles, López–Flores, González–Rodríguez, López Correa, and Hernández–de–Jesús have simply failed to meet the first prong of their prima facie case.

Plaintiffs González–García, Soto–Santiago, Morales–Torres, Ojeda–Acevedo, López–Flores, and Mejías–Vega proffer evidence of conduct which they claim is discriminatory. *Docket Document No. 72.* However, Plaintiffs' own deposition testimony undermines the discriminatory intent of Defendants' putative comments. For example, Plaintiff Soto–Santiago claims that one of Defendant Santiago's followers made discriminatory statements during Defendant Santiago's political campaign, indicating that, if Defendant Santiago won the election, NPP followers would be suspended from work. *Id.* Plaintiff Soto–Santiago also claims that a female supervisor at Defendant Municipality stated that she would feel happy whenever the salary of an NPP municipal employee was decreased. However, in his deposition, Plaintiff Soto–Santiago noted that Defendant Santiago was not present when these comments were allegedly made. *Id.* Finally, Plaintiff Soto–Santiago alleges that, during Defendant Santiago's election campaign, one of Defendant Santiago's followers yelled

---

**2.** To aid the court in identifying genuine issues material fact which will necessitate denial of summary judgment, we have passed "anti-ferreting" rules which require an opposing party to submit "a separate, short, and concise statement of material facts" which must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts". P.R. LOCAL R. 56(c); *Corrada Betances v. Sea-Land Serv. Inc.*, 248 F.3d 40, 43–44 (1st Cir. 2001). These facts must be "followed by a citation to the specific page or paragraph of identified record material supporting the assertion." P.R. LOCAL R. 56(e). We may disregard "any statement of fact not supported by

a specific citation to record material properly considered on summary judgment." *Id.* The Local Rules state that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." *Id.*

While Plaintiffs reference the circumstances of the named Plaintiffs' dismissal, they do not make any statements regarding discriminatory conduct. We note that Plaintiffs seemingly submitted more exhibits than the ones referenced in their motion. However, the anti-ferreting rules are clear. Plaintiffs must elucidate facts, not simply submit exhibits without any context. P.R. LOCAL R. 56(c).

that if Defendant Santiago won, Plaintiff Soto–Santiago would be reassigned to Defendant Municipality's dump. However, Plaintiff Soto–Santiago admitted that he did not know the person, and that the individual was not employed with Defendant Municipality. *Id.* Plaintiff also admitted that he had no personal knowledge of discriminatory acts taken by Defendants against him. Without the causal connection between the complained-of acts, and Defendants, we may not impute these acts to Defendants. Plaintiffs have simply failed to successfully argue that Defendants' undertook their employment actions due to discriminatory animus.

In contrast, Defendants Santiago–Díaz and Delgado submit two sworn statements undermining Plaintiffs' claims of discriminatory intent. *Docket Document No. 47, Exhs. 1, 14.*[3] Defendant Santiago notes that he retained virtually all of the trust and career employees from the previous NPP administration who worked in the Office of the Mayor itself, including Elsie Marrero, who was former Mayor Soto's personal secretary. *Docket Document No. 1, Exh. 1.* Defendant also hired Ms. Brenda López, who was Executive Director during the former Mayor's administration, and promoted her to the trust position of Assistant to the Mayor, even though she had played a role in former Mayor Soto's reelection campaign. *Id.* Defendant also hired former employees of NPP administrations to trust positions throughout Defendant Municipality. *Id.*

Moreover, Defendants submit the Comptroller's audit, detailing employment violations which, the report concluded, left Defendant Municipality in a precarious financial position. *Docket Document Nos. 47, 61.* Defendants submit a letter by Emmalind García, OCALARH's administrator, in which she stated that, in her opinion, the 1997 Classification and Compensation Plan was null and void, since her office did not approve it. *Docket Document No. 47, Exh. 13.* Notably, Plaintiffs have not argued, let alone offered evidence, that they received the positions

---

**3.** In his answer to Defendants' interrogatories, Plaintiff Ortiz–Rivera claims that "many PPD employees in the same appointment position" as he "were not demoted by the actual Mayor and defendants like Julio Otero, Raul López, Sara Mendré, Blanca Jiménez, and others". *Docket Document No. 47.* Plaintiffs did not specifically reference these comments in their opposition motion or in their statements of uncontested facts, *Docket Document Nos. 72, 93,* but simply appended the interrogatory as an exhibit without explaining its significance. We again draw Plaintiffs' attention to Local Rule 56(c). It defeats the purpose of the anti-ferreting rules if parties reference a spate of exhibits without detailing the importance of the exhibits in the context of the arguments they forward. It is not the province of this court to fashion Plaintiffs' arguments for them. *Rivera–Gómez v. de Castro,* 843 F.2d 631, 635 (1st Cir.1988) ("Judges are not expected to be mind–readers. Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace.") (internal citations omitted).

Defendants nonetheless addressed Plaintiff Ortiz–Rivera's comments. *Docket Document No. 47.* They offer Plaintiff Ortiz–Rivera's deposition testimony that he had no personal knowledge of how the named PPD employees' employment histories actually mirrored his. *Id.* at Exh. 4(c). Moreover, although Plaintiff Ortiz–Rivera alleged Defendant Santiago stated that "we could go to the heavenly court to appeal our cases," *Docket Document No. 47, Exh. 4(c),* Plaintiff Ortiz–Rivera stated that the comments were directed at other parties and clarified that they were aimed at cases presently pending against Defendant Municipality. Similarly, Plaintiff alleges that Defendant Santiago was alarmed when he saw Plaintiff on another floor of the Municipal building, and treated him poorly. *Id.* However, Plaintiffs fail to forward how these comments show Defendants' discriminatory intent when they took their 2001 employment actions against Plaintiffs.

from which they were demoted in accordance with the required statutes. We observe that, even if Plaintiffs' appointments were valid, and Defendants made a mistake in their assessment, Defendants' actions would not be in violation of the First Amendment unless Plaintiffs forwarded supplementary evidence that the actions were truly motivated by discriminatory animus.[4]

Plaintiffs have failed to proffer evidence that would lead us to conclude that Defendants acted with discriminatory animus. Defendants, in contrast, have supported their claims of non-discriminatory intent by pointing out deficiencies in Plaintiffs' employment, and suggesting that they held no generalized political animus towards members of the NPP. Consequently, Defendants have met their summary judgment burden.

### IV.

### *Conclusion*

In accordance with the foregoing, we **GRANT** Defendants' summary judgment motion. *Docket Document No. 45, 47.* Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

---

4. While we note that the First Circuit has specifically held that "a new administration [may not] use the 'nullity' of appointments doctrine as a cover for discharges, transfers, and discrimination based solely on political affiliation," *Santiago–Negrón v. Castro–Dávila,* 865 F.2d 431, 436 (1st Cir.1989), this does not mean that a defendant may not rely solely on the existence of a null appointment as justification for an employment action. In other words, as long as discriminatory animus is not the catalyst for an employment action, an employer may rely on nullity of appointments as justification for their employment actions.